Nos. 23-13085 & 23-13095

# United States Court of Appeals
# for the Eleventh Circuit

IN RE: GEORGIA SENATE BILL 202

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-mi-55555 (Boulee, J.)

**BRIEF OF APPELLANTS THE REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, AND GEORGIA REPUBLICAN PARTY, INC.**

William Bradley Carver, Sr.
Baxter D. Drennon
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
BCarver@hallboothsmith.com
BDrennon@hallboothsmith.com

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Intervenor-Defendants*

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and the Georgia Republican Party, Inc., have no parent corporation, and no corporation owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Intervenor-Defendants certify that the CIP contained in this motion is complete. Under Circuit Rule 26.1, Intervenor-Defendants certify that the following have an interest in the outcome of this appeal:

Abbott, Robert, *Defendant*;

Abudu, Nancy, *Attorney for Plaintiffs-Appellees*;

Adegbile, Debo, *Counsel for Plaintiffs-Appellees*;

Aden, Leah, *Counsel for Plaintiffs-Appellees*;

Advancement Project, *Counsel for Plaintiffs-Appellees*;

Ameri, Mana, *Counsel for Plaintiffs-Appellees*;

American Civil Liberties Union Foundation of Georgia, *Counsel for Plaintiffs-Appellees*;

American Civil Liberties Union Foundation, Inc., *Counsel for Plaintiffs-Appellees*;

Andrews, Wanda, *Defendant*;

Aquino, Nora, *Plaintiff-Appellee*;

Asian Americans Advancing Justice-Asian Law Caucus, *Counsel for Plaintiffs-Appellees*;

Asian Americans Advancing Justice-Atlanta, *Plaintiff-Appellee*;

Augusta Georgia Law Department, *Counsel for Defendant*;

Ausburn, Deborah, *Counsel for State Defendants-Appellants*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Awuku, George, *Defendant*;

Banks, Marques, *Counsel for Plaintiffs-Appellees*;

Banter, James, *Counsel for Defendant*;

Barkdull, Annika, *Counsel for State Defendants-Appellants*;

Barnes, Sherry, *Defendant*;

Barrett, James, *Counsel for State Defendants-Appellants*;

Barron, Richard, *Defendant*;

Bartolomucci, Christopher, *Counsel for State Defendants-Appellants*;

Beausoleil, William, *Counsel for Plaintiffs-Appellees*;

Beck Owen & Murray, *Counsel for Defendant*;

Begakis, Steven, *Counsel for Intervenor-Defendants*;

Belichick, Joseph, *Counsel for Plaintiffs-Appellees*;

Bell, Jordan, *Counsel for Defendant*;

Bennette, Matletha, *Counsel for Plaintiffs-Appellees*;

Bergethon, Ross, *Counsel for State Defendants-Appellants*

Black Voters Matter Fund, *Plaintiff-Appellee*;

Blender, Matthew, *Defendant*;

Boulee, Honorable J. P., *United States District Court Judge*;

Bowman, Brad, *Counsel for Defendant*;

Boyle, Donald, *Counsel for State Defendants-Appellants*;

Broder, Karl, *Counsel for Defendant*;

Brooks, Jessica, *Defendant*;

Brooks, Sofia, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Brown, Marcia, *Defendant*;

Bruning, Stephen, *Defendant*;

Bruning, Steven, *Defendant*;

Bryan, Bennett, *Counsel for Defendant*;

Burwell, Kaye, *Counsel for Defendant*;

Campbell-Harris, Dayton, *Counsel for Plaintiffs-Appellees*;

Carr, Christopher, Attorney General of the State of Georgia, *Counsel for State Defendants-Appellants*;

Carver, William, *Counsel for Intervenor-Defendants*;

Cathey, Thomas, *Counsel for Defendant*;

Chalmers, Adams, Backer & Kaufman, LLC, *Counsel for Defendant*;

Chatham County Attorney, *Counsel for Defendant*;

Chatham County Board of Elections, *Defendant*;

Chatham County Board of Registrars, *Defendant*;

Clarke County Board of Election and Voter Registration, *Defendant*;

Clayton County Board of Elections and Registration, *Defendant*;

Cobb County Board of Elections and Registration, *Defendant*;

Cochran, Ken, *Defendant*;

Columbia County Board of Elections, *Defendant*;

Columbia County Board of Registrars, *Defendant*;

Common Cause, *Plaintiff-Appellee*;

Consovoy McCarthy PLLC, *Counsel for Intervenor-Defendants*;

Cramer, Raisa, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Crawford, Teresa, *Defendant*;

Crowell & Moring, LLP, *Counsel for Plaintiffs-Appellees*;

Cushman, Ann, *Defendant*;

Cusick, John, *Counsel for Plaintiffs-Appellees*;

Dasgupta, Riddhi, *Counsel for Defendants-Appellants*;

Dave, Charles, *Defendant*;

Davenport, Jennifer, *Counsel for Defendant*;

Davis Wright Tremaine LLP, *Counsel for Plaintiffs-Appellees*;

Davis, Britton, *Counsel for Plaintiffs-Appellees*;

Day, Stephen, *Defendant*;

DeKalb County Board of Registrations and Elections, *Defendant*;

DeKalb County Law Department, *Counsel for Defendant*;

Delta Sigma Theta Sorority, Inc., *Plaintiff-Appellee*;

Denmark, Emilie, *Counsel for Defendant*;

Dentons US LLP, *Counsel for Intervenor-Defendants*;

Deshazior, Zurich, *Defendant*;

DeThomas, Courtney, *Counsel for Plaintiffs-Appellees*;

Dianis, Judith, *Counsel for Plaintiffs-Appellees*;

Dickey, Gilbert, *Counsel for Intervenor-Defendants*;

Dicks, Terence, *Defendant*;

Dimmick, Brian, *Counsel for Plaintiffs-Appellees*;

DiStefano, Don, *Defendant*;

Doss, Travis, *Defendant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Dozier, Shauna, *Defendant*;

Drennon, Baxter, *Counsel for Intervenor-Defendants*;

Duffey, William, Jr., *State Defendant-Appellant*;

Duffie, Wanda, *Defendant*;

Durbin, Jauan, *Plaintiff-Appellee*;

Durso, Katherine, *Defendant*;

Edwards, Gregory, District Attorney for Dougherty County, *State Defendant-Appellant*;

Elias Law Group LLP, *Counsel for Plaintiffs-Appellees*;

Ellington, Thomas, *Defendant*;

Enjeti-Sydow, Anjali, *Plaintiff-Appellee*;

Evans-Daniel, Karen, *Defendant*;

Evans, James, *Counsel for Defendant*;

Evans, Rachel, *Counsel for Plaintiffs-Appellees*;

Eveler, Janine, *Defendant*;

Falk, Donald, *Counsel for State Defendants-Appellants*;

Fambrough, Willa, *Defendant*;

Faransso, Tania, *Counsel for Plaintiffs-Appellees*;

Farrell, Gregory, *Counsel for Plaintiffs-Appellees*;

Feldsherov, Ilya, *Counsel for Plaintiffs-Appellees*;

Fenwick & West, LLP, *Counsel for Plaintiffs-Appellees*;

Field, Brian, *Counsel for State Defendants-Appellants*;

First Congregational Church, United Church of Christ Incorporated, *Plaintiff-Appellee*;

Fogelson, Matthew, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Forsyth County Board of Voter Registrations and Elections, *Defendant*;

Foster, Mikayla, *Counsel for Plaintiffs-Appellees*;

Freeman Mathis & Gary, LLP, *Counsel for Defendant*;

Fulton County Attorney's Office, *Counsel for Defendant*;

Fulton County Registration and Elections Board, *Defendant*;

GALEO Latino Community Development Fund, Inc., *Plaintiff-Appellee*;

Gammage, Keith, *Defendant*;

Gartland, Pat, *Defendant*;

Gay, Nancy, *Defendant*;

Geiger, Debra, *Defendant*;

Georgia Adapt, *Plaintiff-Appellee*;

Georgia Advocacy Office, *Plaintiff-Appellee*;

Georgia Coalition for the People's Agenda, Inc., *Plaintiff-Appellee*;

Georgia Department of Law, *Counsel for State Defendants-Appellants*;

Georgia Latino Alliance for Human Rights, Inc., *Plaintiff-Appellee*;

Georgia Muslim Voter Project, *Plaintiff-Appellee*;

Georgia Republican Party, Inc., *Intervenor-Defendant*;

Georgia State Conference of the NAACP, *Plaintiff-Appellee*;

Georgia State Election Board, *Defendant*;

Ghazal, Sara, *State Defendant-Appellant*;

Gibbs, Fannie, *Plaintiff-Appellee*;

Gillon, Thomas, *Defendant*;

Givens, Diane, *Defendant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Gossett, David, *Counsel for Plaintiffs-Appellees*;

Green, Tyler, *Counsel for Intervenor-Defendants*;

Greenberg Traurig, LLP, *Counsel for Defendant*;

Gwinnett County Board of Registrations and Elections, *Defendant*;

Gwinnett County Department of Law, *Counsel for Defendant*;

Hall Booth Smith, P.C., *Counsel for Intervenor-Defendants*;

Hall County Board of Elections and Registration, *Defendant*;

Hall County Government, *Counsel for Defendant*;

Hall, Dorothy, *Defendant*;

Hall, John, *Counsel for Intervenor-Defendants*;

Hamilton, Brittni, *Counsel for Plaintiffs-Appellees*;

Hancock, Jack, *Counsel for Defendant*;

Hart, Ralph, *Counsel for Defendant*;

Hart, Twyla, *Defendant*;

Hasselberg, Emily, *Counsel for Plaintiffs-Appellees*;

Hayes, Vilia, *Counsel for Plaintiffs-Appellees*;

Haynie, Litchfield & White, PC, *Counsel for Defendant*;

Hazard, Joel, *Defendant*;

Heard, Bradley, *Counsel for Plaintiffs-Appellees*;

Heimes, Marianne, *Defendant*;

Henseler, James, *Counsel for Plaintiffs-Appellees*;

Herren, Thomas, *Counsel for Plaintiffs-Appellees*;

Ho, Dale, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Hodge, Malinda, *Defendant*;

Houk, Julie, *Counsel for Plaintiffs-Appellees*;

Hoyos, Luis, *Counsel for Plaintiffs-Appellees*;

Hughes Hubbard & Reed, LLP, *Counsel for Plaintiffs-Appellees*;

Hughes, Aileen, *Counsel for Plaintiffs-Appellees*;

Hull Barrett, PC, *Counsel for Defendant*;

Ingram, Randy, *Defendant*;

Jacoutot, Bryan, *Counsel for State Defendants-Appellants*;

Jaffe, Erik, *Counsel for State Defendants-Appellants*;

Jahangiri, Mahroh, *Counsel for Plaintiffs-Appellees*;

James Bates Brannan Groover LLP, *Counsel for Defendant*;

Jarrard & Davis, LLP, *Counsel for Defendant*;

Jasrasaria, Jyoti, *Counsel for Plaintiffs-Appellees*;

Jaugstetter, Patrick, *Counsel for Defendant*;

Jedreski, Matthew, *Counsel for Plaintiffs-Appellees*;

Jester, Alfred, *Defendant*;

Jester, Nancy, *Defendant*;

Jhaveri, Sejal, *Counsel for Plaintiffs-Appellees*;

Johnson, Aaron, *Defendant*;

Johnson, Ben, *Defendant*;

Johnson, Darlene, *Defendant*;

Johnson, Melinda, *Counsel for Plaintiffs-Appellees*;

Johnston, Janice, *State Defendant-Appellant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Joiner, Amelia, *Counsel for Defendant*;

Kanu, Nkechi, *Counsel for Plaintiffs-Appellees*;

Kaplan, Mike, *Defendant*;

Kastorf Law, LLC, *Counsel for Plaintiffs-Appellees*;

Kastorf, Kurt, *Counsel for Plaintiffs-Appellees*;

Kaufman, Alex, *Counsel for Intervenor-Defendants*;

Keker Van Nest & Peters LLP, *Counsel for Plaintiffs-Appellees*;

Kemp, Brian, Governor of the State of Georgia, *State Defendant-Appellant;*

Kennedy, David, *Defendant*;

Kennedy, Kate, *Counsel for Plaintiffs-Appellees*;

Keogh, William, *Counsel for Defendant*;

Khan, Sabrina, *Counsel for Plaintiffs-Appellees*;

Kim, Danielle, *Counsel for Plaintiffs-Appellees*;

Kingsolver, Justin, *Counsel for Plaintiffs-Appellees*;

Knapp, Halsey, *Counsel for Plaintiffs-Appellees*;

Koorji, Alaizah, *Counsel for Plaintiffs-Appellees*;

Krevolin & Horst, LLC, *Counsel for Plaintiffs-Appellees*;

Kucharz, Kevin, *Counsel for Defendant*;

Lakin, Sophia, *Counsel for Plaintiffs-Appellees*;

Lam, Leo, *Counsel for Plaintiffs-Appellees*;

Lang, Antan, *Defendant*;

LaRoss, Diane, *Counsel for State Defendants-Appellants*;

Latino Community Fund of Georgia, *Plaintiff-Appellee*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Lauridsen, Adam, *Counsel for Plaintiffs-Appellees*;

Law Office of Bryan L. Sells, LLC, *Counsel for Plaintiffs-Appellees*;

Law Office of Gerald R Weber, LLC, *Counsel for Plaintiffs-Appellees*;

Law Office of Heather Szilagyi, *Counsel for Plaintiffs-Appellees*;

Lawyers' Committee for Civil Rights Under Law, *Counsel for Plaintiffs-Appellees*;

Le, Anh, *Former Defendant*;

League of Women Voters of Georgia, Inc., *Plaintiff-Appellee*;

Leung, Kimberly, *Counsel for Plaintiffs-Appellees*;

Lewis, Anthony, *Defendant*;

Lewis, Joyce, *Counsel for Plaintiffs-Appellees*;

Lin, Stephanie, *Counsel for Plaintiffs-Appellees*;

Lindsey, Edward, *State Defendant-Appellant*;

Lower Muskogee Creek Tribe, *Plaintiff-Appellee*;

Lowman, David, *Counsel for Defendant*;

Ludwig, Jordan, *Counsel for Plaintiffs-Appellees*;

Luth, Barbara, *Defendant*;

Ma, Eileen, *Counsel for Plaintiffs-Appellees*;

Mack, Rachel, *Counsel for Defendant*;

Macon-Bibb County Board of Elections, *Defendant*;

Mahoney, Thomas, *Defendant*;

Manifold, Zach, *Defendant*;

Martin, Grace Simms, *Counsel for Defendants*;

Mashburn, Matthew, *State Defendant-Appellant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

May, Caitlin, *Counsel for Plaintiffs-Appellees*;

McAdams, Issac, *Defendant*;

McCandless, Spencer, *Counsel for Plaintiffs-Appellees*;

McCarthy, Thomas, *Counsel for Intervenor-Defendants*;

McClain, Roy, *Defendant*;

McCord, Catherine, *Counsel for Plaintiffs-Appellees*;

McFalls, Tim, *Defendant*;

McFarland, Ernest, *Counsel for Plaintiffs-Appellees*;

McGowan, Charlene, *Counsel for State Defendants-Appellants*;

Mcrae, Colin, *Defendant*;

Melcher, Molly, *Counsel for Plaintiffs-Appellees*;

Metropolitan Atlanta Baptist Ministers Union, Inc., *Plaintiff-Appellee*;

Miller, Nicholas, *Counsel for State Defendants-Appellants*;

Milord, Sandy, *Counsel for Defendant*;

Minnis, Terry, *Counsel for Plaintiffs-Appellees*;

Mizner, Susan, *Counsel for Plaintiffs-Appellees*;

Mocine-McQueen, Marcos, *Counsel for Plaintiffs-Appellees*;

Momo, Shelley, *Counsel for Defendant*;

Morrison, Tina, *Counsel for Plaintiffs-Appellees*;

Mosbacher, Jennifer, *Defendant*;

Motter, Susan, *Defendant*;

Murray, Karen, *Defendant*;

NAACP Legal Defense and Education Fund, Inc., *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

National Republican Congressional Committee, *Intervenor-Defendant*;

National Republican Senatorial Committee, *Intervenor-Defendant;*

Natt, Joel, *Defendant*;

Nemeth, Miriam, *Counsel for Plaintiffs-Appellees*;

Nercessian, Armen, *Counsel for Plaintiffs-Appellees*;

Newland, James, *Defendant*;

Nguyen, Candice, *Counsel for Plaintiffs-Appellees*;

Nguyen, Phi, *Counsel for Plaintiffs-Appellees*;

Nkwonta, Uzoma, *Counsel for Plaintiffs-Appellees*;

Noa, Jack, *Defendant*;

Noland Law Firm, LLC, *Counsel for Defendants;*

Noland, William, *Counsel for Defendant*s;

Norris, Cameron, *Counsel for Intervenor-Defendants*;

Norse, William, *Defendant*;

Nwachukwu, Jennifer, *Counsel for Plaintiffs-Appellees*;

O'Brien, James, *Defendant*;

O'Connor, Eileen, *Counsel for Plaintiffs-Appellees*;

O'Lenick, Alice, *Defendant*;

Olm, Rylee, *Counsel for Plaintiffs-Appellees*;

Oxford, Neil, *Counsel for Plaintiffs-Appellees*;

Paik, Steven, *Plaintiff-Appellee*;

Pant, Shontee, *Counsel for Plaintiffs-Appellees*;

Paradise, Loree, *Counsel for State Defendants-Appellants*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Parker, Warrington, *Counsel for Plaintiffs-Appellees*;

Pelletier, Susan, *Counsel for Plaintiffs-Appellees*;

Petrany, Stephen, *Counsel for State Defendants-Appellants*;

Porter, Megan, *Counsel for Plaintiffs-Appellees*;

Powell, Laura, *Counsel for Plaintiffs-Appellees*;

Prince, Joshua, *Counsel for State Defendants-Appellants*;

Pulgram, Laurence, *Counsel for Plaintiffs-Appellees*;

Pullar, Patricia, *Defendant*;

Qadir, Hunaid, *Defendant*;

Radzikinas, Carla, *Defendant*;

Raffensperger, Brad, Secretary of State of Georgia, *State Defendant-Appellant*;

Raffle, Rocky, *Defendant*;

Ramahi, Zainab, *Counsel for Plaintiffs-Appellees*;

Rich, James, *Counsel for Plaintiffs-Appellees*;

Richardson, Jasmyn, *Counsel for Plaintiffs-Appellees*;

Richmond County Board of Elections, *Defendant*;

Ringer, Cheryl, *Counsel for Defendant*;

Rise, Inc., *Plaintiff-Appellee*;

Rodriguez, Anthony, *Defendant*;

Rosborough, Davin, *Counsel for Plaintiffs-Appellees*;

Rosenberg, Ezra, *Counsel for Plaintiffs-Appellees*;

Rosenberg, Steven, *Counsel for Defendant*;

Russ, John, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Ruth, Kathleen, *Defendant*;

Ryan, Elizabeth, *Counsel for Plaintiffs-Appellees*;

Sabzevari, Arash, *Counsel for Defendant*;

Sachdeva, Niharika, *Counsel for Plaintiffs-Appellees*;

Schaerr, Gene, *Counsel for State Defendants-Appellants*;

Schaerr Jaffe, LLP, *Counsel for State Defendants-Appellants*;

Scott, William, *Counsel for Defendant*;

Seals, Veronica, *Defendant*;

Segarra, Esperanza, *Counsel for Plaintiffs-Appellees*;

Sells, Bryan, *Counsel for Plaintiffs-Appellees*;

Shah, Niyati, *Counsel for Plaintiffs-Appellees*;

Sheats, Gala, *Defendant*;

Shelly, Jacob, *Counsel for Plaintiffs-Appellees*;

Shirley, Adam, *Defendant*;

Sieff, Adam, *Counsel for Plaintiffs-Appellees*;

Silas, Tori, *Defendant*;

Sixth District of the African Methodist Episcopal Church, *Plaintiff-Appellee*;

Smith, Casey, *Counsel for Plaintiffs-Appellees*;

Smith, Dele, *Defendant*;

Smith, Mandi, *Defendant*;

Solh, Chavira, *Counsel for Plaintiffs-Appellees*;

Solomon, Elbert, *Plaintiff-Appellee*;

Sosebee, Charlotte, *Defendant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Southern Christian Leadership Conference, *Former Plaintiff*;

Southern Poverty Law Center, *Counsel for Plaintiffs-Appellees*;

Sowell, Gregory, *Counsel for Defendant*;

Spangler, Herbert, *Former Defendant*;

Sparks, Adam, *Counsel for Plaintiffs-Appellees*;

Squiers, Cristina, *Counsel for State Defendants-Appellants*;

State of Georgia, *State Defendant;*

Stewart Melvin & Frost, LLP, *Counsel for Defendant*;

Strawbridge, Patrick, *Counsel for Intervenor-Defendants*;

Sumner, Stuart, *Counsel for Intervenor-Defendants*;

Sullivan, Rebecca, *Former Defendant*;

Sung, Connie, *Counsel for Plaintiffs-Appellees*;

Swift, Karli, *Defendant*;

Szilagyi, Heather, *Counsel for Plaintiffs-Appellees*;

Tatum, Tobias, *Counsel for State Defendants-Appellants*;

Taylor English Duma LLP, *Counsel for State Defendants-Appellants*;

Taylor, Wandy, *Defendant*;

Thatte, Anuja, *Counsel for Plaintiffs-Appellees*;

The ACLU Foundation Disability Rights Program, *Counsel for Plaintiffs-Appellees*;

The Arc of the United States, *Plaintiff-Appellee*;

The Concerned Black Clergy of Metropolitan Atlanta, Inc., *Plaintiff-Appellee*;

The Georgia State Election Board, *State Defendant-Appellant*;

The Justice Initiative, Inc., *Plaintiff-Appellee*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

The New Georgia Project, *Plaintiff-Appellee*;

The Republican National Committee, *Intervenor-Defendant*;

The Urban League of Greater Atlanta, Inc., *Plaintiff-Appellee*;

Thomas, Ethan, *Counsel for Plaintiffs-Appellees*;

Thompson, Grace, *Counsel for Plaintiffs-Appellees*;

Till, Ann, *Defendant*;

Topaz, Jonathan, *Counsel for Plaintiffs-Appellees*;

Trent, Edward, *Counsel for State Defendants-Appellants*;

Tucker, William, *Counsel for Plaintiffs-Appellees*;

Tyson, Bryan, *Counsel for State Defendants-Appellants*;

Uddullah, Angelina, *Plaintiff-Appellee*;

Unger, Jess, *Counsel for Plaintiffs-Appellees*;

United States Department of Justice, *Counsel for Plaintiffs-Appellees*;

United States of America, *Plaintiff-Appellee*;

Van Stephens, Michael, *Counsel for Defendant*;

Vander Els, Irene, *Counsel for Defendant*;

Varghese, George, *Counsel for Plaintiffs-Appellees*;

Varner, Johnny, *Defendant*;

Vasquez, Jorge, *Counsel for Plaintiffs-Appellees*;

Waite, Tristen, *Counsel for Defendant*;

Wang, Emily, *Counsel for Plaintiffs-Appellees*;

Ward-Packard, Samuel, *Counsel for Plaintiffs-Appellees*;

Wardenski, Joseph, *Counsel for Plaintiffs-Appellees*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Watson, Jeanetta, *Former Defendant*;

Webb, Brian, *Counsel for State Defendants-Appellants*;

Weber, Gerald, *Counsel for Plaintiffs-Appellees*;

Weigel, Daniel, *Counsel for State Defendants-Appellants*;

Wesley, Carol, *Defendant*;

White, Daniel, *Counsel for Defendant*;

White, William, *Counsel for Intervenor-Defendants*;

Wiggins, Larry, *Defendant*;

Wilberforce, Nana, *Counsel for Plaintiffs-Appellees*;

Wilborn, Eric, *Counsel for Defendant*;

Willard, Russell, *Counsel for State Defendants-Appellants*;

Williams, Gilda, *Counsel for Plaintiffs-Appellees*;

Williams, Tuwanda, *Counsel for Defendant*;

Wilmer Cutler Pickering Hale and Dorr LLP, *Counsel for Plaintiffs-Appellees*;

Wilson, Jacob, *Counsel for Defendant*s;

Wilson, Melanie, *Counsel for Defendant*;

Wingate, Mark, *Defendant*;

Winichakul, Pichaya, *Counsel for Plaintiffs-Appellees*;

Women Watch Afrika, *Plaintiff-Appellee*;

Woodfin, Conor, *Counsel for Intervenor-Defendants*;

Woolard, Cathy, *Defendant*;

Worley, David, *Former Defendant*;

Wurtz, Lori, *Defendant*;

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Yoon, Meredyth, *Counsel for Plaintiffs-Appellees*;

Young, Sean, *Counsel for Plaintiffs-Appellees*; and

Zatz, Clifford, *Counsel for Plaintiffs-Appellees*.


Dated: July 1, 2024                    */s/ Gilbert C. Dickey*
                                        Counsel for Intervenor-Defendants

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## STATEMENT REGARDING ORAL ARGUMENT

The Intervenor-Defendants respectfully request oral argument, as this appeal presents important questions of federal law that will affect elections nationwide.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..................... C-1

Statement Regarding Oral Argument ............................................................................. i

Table of Authorities .................................................................................................... iv

Introduction .................................................................................................................. 1

Jurisdictional Statement............................................................................................... 2

Issues Statement ........................................................................................................... 2

Statement Regarding Adoption .................................................................................... 3

Statement of the Case ................................................................................................... 3

    A. Congress enacted the Materiality Provision to bar discriminatory practices in the assessment of voter qualifications. ........................................ 3

    B. Georgia requires a birthdate to confirm the identity of an absentee voter. ............................................................................................................... 5

    C. The district court preliminarily enjoins Georgia's birthdate requirement. .. 7

Summary of the Argument ......................................................................................... 10

Standard of Review .................................................................................................... 12

Argument .................................................................................................................... 13

    I. The Plaintiffs are unlikely the prevail on the merits of their novel statutory claim. ....................................................................................................... 13

        A. The Materiality Provision applies to voter qualification determinations, not ballot-casting rules. ....................................................................... 14

            1. The statutory text covers actions that determine whether a voter is qualified to vote. ............................................................................ 14

            2. The history of the Materiality Provision and principles of constitutional avoidance confirm that it applies only to the voter-qualification process. ............................................................... 21

            3. Caselaw confirms that the Materiality Provision has long been understood to apply to voter-qualification. ............................... 23

        B. The birthdate requirement does not deny anyone the right to vote. .......... 26

    II. The Plaintiffs' undue delay confirms that they are not facing irreparable harm. ....................................................................................................... 29

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

III.   The equities and public interest weigh in favor of reversing the preliminary injunction. .................................................................................... 33

Conclusion ............................................................................................. 35

Certificate of Compliance ..................................................................... 36

Certificate of Service ............................................................................ 37

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez,*
   585 U.S. 579 (2018) ................................................................. 38

*\*Adventist Health Sys. v. Dep't of Health & Hum. Servs.,*
   17 F.4th 793 (11th Cir. 2021) ..........................................33, 34, 37

*\*Ball v. Chapman,*
   289 A.3d 1 (Pa. 2023) ..........................................................17, 20, 29

*Benisek v. Lamone,*
   585 U.S. 155 (2018) ............................................13, 33, 35, 36, 37

*Brnovich v. Democratic Nat'l Comm.,*
   594 U.S. 647 (2021) .................................................................. 30, 39

*Circuit City Stores v. Adams,*
   532 U.S. 105 (2001) ........................................................................17

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) .................................................................. 24, 25

*City of Dallas v. Delta Air Lines, Inc.,*
   847 F.3d 279 (5th Cir. 2017) .......................................................14

*Condon v. Reno,*
   913 F. Supp. 946 (D.S.C. 1995) ............................................. 26, 27

*Crawford v. Marion Cnty. Election Bd.,*
   553 U.S. 181 (2008) .................................................................. 30, 39

*Democratic Nat'l Comm. v. Wis. State Legislature,*
   141 S. Ct. 28 (2020) .....................................................................38

*Democratic Party of Ga., Inc. v. Crittenden,*
   347 F. Supp. 3d 1324 (N.D. Ga. 2018) ....................................29

*Eknes-Tucker v. Governor of Ala.,*
   80 F.4th 1205 (11th Cir. 2023) ........................................... 13, 14

*Eu v. S.F. Cnty. Democratic Central Comm.,*
   489 U.S. 214 (1989) .....................................................................39

*\*Fla. State Conf. of NAACP v. Browning,*
   522 F.3d 1153 (11th Cir. 2008) ................................................28

*Friedman v. Snipes,*
   345 F. Supp. 2d 1356 (S.D. Fla. 1994) ...................................27

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ..................................................................................... 26

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
    81 F.4th 1328 (11th Cir. 2023) .................................................................. 38

*Liebert v. Millis*, No. 3:23-cv-672,
    2024 WL 2078216 (W.D. Wis. May 9, 2024) ............................. 16, 18, 19, 21

*Martin v. Crittenden*,
    347 F. Supp. 3d 1302 (N.D. Ga. 2018) ..................................................... 29

*Martin v. Kemp*,
    341 F. Supp. 3d 1326 (N.D. Ga. 2018) ....................................................... 6

*McKay v. Altobello*, No. 1:96-cv-3458,
    1996 WL 635987 (E.D. La. 1996) ............................................................ 26

*Migliori v. Cohen*,
    36 F.4th 153 (3d Cir. 2022) ................................................................. 11, 27

*New Ga. Project v. Raffensperger*,
    976 F.3d 1278 (11th Cir. 2020) ............................................................ 38, 39

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ..................................................................................... 25

*\*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*,
    97 F.4th 120 (3d Cir. 2024) ........................ 2, 12, 15, 16, 18, 19, 21, 22, 24, 28, 31, 33

*Polselli v. IRS*,
    598 U.S. 432 (2023) ..................................................................................... 16

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ........................................................................................ 36

*\*Ritter v. Migliori*,
    142 S. Ct. 1824 (2022) ...................................... 12, 15, 20, 21, 30, 31, 32, 33

*Ritter v. Migliori*,
    143 S. Ct. 297 (2022) ............................................................................ 12, 27

*Rosario v. Rockefeller*,
    410 U.S. 752 (1973) ..................................................................................... 30

*\*Schwier v. Cox*,
    340 F.3d 1284 (11th Cir. 2003) ........................................................... 25, 27

*Schwier v. Cox*,
    412 F. Supp. 2d 1266 (N.D. Ga. 2005) .................................................... 29

*Schwier v. Cox*,
    439 F.3d 1285 (11th Cir. 2006) ........................................................28

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ........................................................................32

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) ........................................................................17

*Swain v. Junior*,
    961 F.3d 1276 (11th Cir. 2020) ........................................................14

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
    484 U.S. 365 (1988) ........................................................................18

*United States v. Mississippi*,
    380 U.S. 128 (1965) ........................................................................24

*Vote.Org v. Callanen*,
    39 F.4th 297 (5th Cir. 2022) ............................................................32

*\*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ........................................... 33, 34, 35, 37

**Statutes**

28 U.S.C. §1292 ...................................................................................2

28 U.S.C. §1331 ...................................................................................2

*\*52 U.S.C. §10101 ..................................1, 2, 3, 4, 11, 13, 14, 15, 16, 17, 18, 19, 26, 27, 28

Act of April 2, 2019, 2019 Ga. Laws 7 ....................................................5

Act of May 2, 2012, 2012 Ga. Laws 995 ..................................................5

*\*Ga. Code §21-2-381 .................................................................5, 6, 16, 33

Ga. Code §21-2-385 ........................................................................1, 6, 17

Ga. Code §21-2-386(a)(1)(B) ............................................................5, 6, 17

Pub. L. No. 86-449, §601, 74 Stat. 86, 91 (1960) .....................................27

**Rules**

Fed. R. App. P. 28(i). ..........................................................................3

**Other Authorities**

*Application*, Black's Law Dictionary (4th ed. 1968) ...............................15

*Application*, Webster's Dictionary (1913) ...........................................15

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Comm'n on Civil Rights, *Voting: 1961 Commission on Civil Rights Report* (1961), perma.cc/9QF6-W5HT.................................................................3, 4, 20, 21

H.R. Rep. No. 88-914 (Nov. 20, 1963), *reprinted in* 1964 U.S.C.C.A.N. 2391 ..... 5, 21, 22

*In*, Oxford English Dictionary (3d ed. 2021) ......................................................14

Misc. Proposals Regarding the C.R. of Persons within the Jurisdiction of the U.S.: Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 88 Cong. 915 (May 8, 1963) (statement of Rep. Peter W. Rodino, Jr.) ................................. 5

Wright & Miller, 11A Fed. Prac. & Proc., §2948.1 (3d ed. 2013) ....................29

## Constitutional Provisions

U.S. Const. amend. XV, §1.................................................................................21

U.S. Const. amend. XV, §2.................................................................................21

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## INTRODUCTION

To conduct elections, States must have rules that address two different questions: who is qualified to vote, and how qualified voters cast a valid ballot. The Materiality Provision of the Civil Rights Act of 1964 addresses only the first question. Congress enacted the Materiality Provision as part of a suite of reforms aimed at eliminating racially discriminatory practices in voter registration. Placed between two other provisions that govern the voter-qualification process, the Materiality Provision provides that "in determining" whether a voter is qualified, state officials cannot refuse to qualify a voter because of immaterial mistakes on "any application, registration, or other act requisite to voting." 52 U.S.C. §10101(a)(2)(B). But it doesn't tell States what rules they can set regarding how qualified voters cast a valid ballot.

This appeal concerns Georgia's rules for how a qualified voter can cast an absentee ballot by mail. In 2021, Georgia reformed its election system to make voting easier and cheating harder. Among those reforms, Georgia eliminated the signature-matching process for absentee ballots. Instead, it now requires absentee voters to include a valid ID number and their date of birth—two numbers readily available to the voter, but not to others. Ga. Code §21-2-385(a). Two years after they first sued, the Plaintiffs—a group of fifteen different interest groups—asked the district court to preliminarily enjoin enforcement of the birthdate requirement, alleging that it violated the Materiality Provision. The district court assumed that the Materiality Provision's voter-qualification rules also governed the ballot-casting process. And it granted the preliminary injunction since the birthdate requirement is not material to qualifying the voter.

1

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

The district court's extension of the Materiality Provision to vote-casting rules "makes no sense." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 134 (3d Cir. 2024). It would render States powerless to enact even the most basic vote-casting rules. The requirement to select a preferred candidate, for example, is not material to whether a voter is qualified to vote. So according to the district court, a ballot with no candidates selected must somehow be counted, since the failure to select a candidate is not relevant to whether a voter is qualified. The Third Circuit recently rejected that nonsensical approach, reversing a decision relied upon by the district court below. *Id.* 129-35. This Court should follow the Third Circuit and reverse the district court.

## STATEMENT REGARDING ADOPTION

The district court had jurisdiction under 28 U.S.C. §1331 because the Plaintiffs allege that Georgia's law violates federal law under 52 U.S.C. §10101. This Court has jurisdiction because Defendants appeal from an order granting injunctive relief. 28 U.S.C. §1292(a)(1). The district court entered that order on August 18, 2023, Doc. 613, and Defendants timely appealed, Docs. 639, 643 (Sept. 18, 2023).[1]

## ISSUES STATEMENT

1. Whether the district court erred when it facially enjoined part of a Georgia election law that prohibits *conduct*—giving items to a person waiting in line to vote—based on the First Amendment, which protects *expression*.

---

[1] Unless otherwise indicated, all "Doc." numbers refer to the district court docket number in the consolidated case, *In re: Georgia Senate Bill 202*, No. 1:21-mi-55555 (N.D. Ga.).

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

2. Whether the district court erred when it enjoined enforcement of Georgia's law requiring absentee voters to include their birthdate on the outer envelope of an absentee ballot, ruling that the law likely violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. §10101(a)(2)(B).

## JOINDER STATEMENT

As to the first issue, the Intervenor-Defendants adopt the brief of the State Defendants, which explains why the district court's preliminary injunction of Georgia's 25-foot buffer zone in which gift-giving to voters is prohibited should be reversed. *See* Fed. R. App. P. 28(i).

## STATEMENT OF THE CASE

### A.    Congress enacted the Materiality Provision to bar discriminatory practices in the assessment of voter qualifications.

Congress enacted the statutory provision at issue in this case, known as the "Materiality Provision," to address discriminatory registration practices that prevented black citizens from voting. Nearly a century after the Fifteenth Amendment guaranteed all citizens the right to vote regardless of their race, black citizens still faced discriminatory practices in exercising their right to vote. To address these obstacles, the Civil Rights Act of 1957 created the U.S. Commission on Civil Rights. It charged the Commission with investigating the problem and recommending legislation.

The Commission highlighted "discriminatory practices on the part of registrars" erected as an obstacle to black voters. Comm'n on Civil Rights, *Voting: 1961 Commission on Civil Rights Report* 43 (1961), perma.cc/9QF6-W5HT. Those discriminatory practices were "aimed at reducing Negro registration." *Id.* Registrars in Louisiana, for example,

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

would reject applications for minor misspellings of "the words 'October' and 'Democratic.'" *Id.* at 55. They would require applicants to calculate their age to the exact number of days even when state law required only a showing that the voter was 21 years old. *Id.* at 56. If that weren't enough, "some [registrars] would exclude, others include, the day on which the application is filed." *Id.* Most of the time, these "arbitrary practices [were] largely, or even exclusively, directed against" black citizens. *Id.* at 66. The Commission concluded that discrimination "against would-be voters on racial grounds" through the "discriminatory application of legal qualifications for voters" resulted in "substantial numbers" of black citizens being "denied the right to vote on grounds of race or color." *Id.* at 135-137.

Congress responded to these discriminatory practices in Section 101 of the Civil Rights Act of 1964. It enacted three provisions aimed at discriminatory application of voter qualifications. The first of these directed state officials not to "apply any" discriminatory "standard, practice, or procedure" when "determining whether any individual is qualified under State law or laws to vote." 52 U.S.C. §10101(a)(2)(A). The third prohibited any state officer from "employ[ing] literacy test as a qualification for voting" unless statutory conditions were satisfied. *Id.* §10101(a)(2)(C).

Nestled between these two provisions, the Materiality Provision prohibited any state officer from "deny[ing] the right of any individual to vote … because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law." *Id.* §10101(a)(2)(B). According to the House Report, the "crux of the problem" targeted by this provision was at the voter-

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

registration stage: "registrars will overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting a Negro application for the same or more trivial reasons." H.R. Rep. No. 88-914 (Nov. 20, 1963), *reprinted in* 1964 U.S.C.C.A.N. 2391, 2491. Congress enacted the provision to "close[] the door to a common excuse given by registrars in denying registration to Negro applicants who are otherwise qualified." Misc. Proposals Regarding the C.R. of Persons within the Jurisdiction of the U.S.: Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 88 Cong. 915 (May 8, 1963) (statement of Rep. Peter W. Rodino, Jr.).

**B.    Georgia requires a birthdate to confirm the identity of an absentee voter.**

For nearly two decades, Georgia has broadly allowed voters to cast absentee ballots by mail. *See Martin v. Kemp*, 341 F. Supp. 3d 1326, 1329 (N.D. Ga. 2018). It has balanced this policy with mechanisms to confirm the identity of the person casting an absentee ballot. For many years, Georgia required both verification of signatures on ballot envelopes and at least a partial birth date. *See id.* at 1329 n.1; Act of May 2, 2012, §27, 2012 Ga. Laws 995, 1017-18 (amending the signature-verification procedures in Ga. Code §21-2-386). Before the 2020 election, Georgia revised its absentee voting procedures to drop the requirement for information about a voter's birthdate. *See* Act of April 2, 2019, §30, 2019 Ga. Laws 7, 25 (amending Ga. Code §21-2-384 to remove "year of elector's birth" requirement).

After the 2020 election, Georgia's SB 202 reformed the State's system for voting absentee by mail. Under SB 202, any Georgia voter may apply to vote absentee by mail. *See* Ga. Code §21-2-381. To receive an absentee ballot, a voter must submit an

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

application containing information "to confirm the identity of the voter." *Id.* §21-2-381(a)(1)(C)(i). This information includes the applicant's "name, date of birth, address as registered, address where the elector wishes the ballot to be mailed, and the number of his or her Georgia driver's license or identification card" or an alternate means of identification. *Id.* The registrar uses this information to "verify the identity of the applicant," and issues an absentee ballot if the voter is eligible. *Id.* §21-2-381(b)(1)-(2). If there is a "mismatch" between the identifying information and the registrar's records, then the applicant receives a provisional absentee ballot with instructions on how to "cure the discrepancy." *Id.* §21-2-381(b)(3).

A voter who receives an absentee ballot must then follow a statutory procedure to cast an absentee vote. *Id.* §21-2-385. After filling out the ballot, the voter must "fold the ballot and enclose and securely seal it" in an envelope labeled "Official Absentee Ballot." *Id.* §21-2-385(a). The voter then places that envelope in a "second one, on which is printed the form of the oath of the elector" and "other required identifying information." *Id.* The required information includes "his or her date of birth." *Id.*

Absentee ballots are returned to the county registrar or clerk, who reviews them to confirm the identity of the person casting the ballot. *Id.* §21-2-386(a)(1)(B). To do this, the registrar confirms that the voter has signed the oath and that the identifying information on the envelope matches the voter's registration records. *Id.* The registrar must reject an absentee ballot if the identifying information does not match. *Id.* §21-2-386(a)(1)(C). And the registrar must notify a voter whose absentee ballot has been rejected, and that voter receives an opportunity to cure the defect. *Id.*

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

**C.     The district court preliminarily enjoins Georgia's birthdate requirement.**

Several Plaintiffs challenged the birthdate requirement in district court, arguing that it violates the Materiality Provision. *See* Doc. 83 at 130-31, No. 1:21-cv-1284 (N.D. Ga. May 24, 2021); Doc. 35 at 83-84, No. 1:21-cv-1259 (N.D. Ga. May 28, 2021). They sued several state officials—including Governor Brian Kemp, Secretary of State Brad Raffensperger, and members of the Georgia Board of Elections—as well as the boards of elections of several counties. The Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and the Georgia Republican Party, Inc., intervened as defendants. The district court consolidated these challenges with several other challenges to provisions of SB 202. Doc. 1.

More than two years after they filed suit and six months after the 2022 election, the Plaintiffs[2] moved for a preliminary injunction barring state and county defendants from enforcing the birthdate requirement. Doc. 548. They argued that the birthdate requirement violates the Materiality Provision because correctly filling out the birthdate on the outer envelope of an absentee ballot is not relevant to whether a person is eligible to vote. Doc. 548-1 at 19-20. They asked the district court to issue a preliminary injunction directing the State and County Defendants not to reject ballots because of a failure to comply with the birthdate requirement. Doc. 548-1 at 28.

---

[2] The Plaintiffs who moved to enjoin the birthdate requirement at issue in this appeal are the Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., League of Women Voters of Georgia, Inc., GALEO Latino Community Development Fund, Inc., Common Cause, Lower Muskogee Creek Tribe, Sixth District of the African Methodist Episcopal Church, Delta Sigma Theta Sorority, Georgia ADAPT, Georgia Advocacy Office, and the Southern Christian Leadership Conference. Doc. 548.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

The State Defendants and Republican Defendants opposed the preliminary injunction. Docs. 582, 583. On the merits, both groups of defendants explained that the Materiality Provision does not reach ballot-casting rules like the birthdate requirement. Doc. 582 at 20-21; Doc. 583 at 5-6. It focuses instead on the determination whether a person is qualified to vote at all. Doc. 582 at 20-22; Doc. 583 at 5-8. They also explained that the Materiality Provision did not apply because the birthdate requirement did not deny anyone the right to vote; it only regulated the casting of absentee ballots. And the State Defendants argued that the Plaintiffs lacked standing to bring their claims against the State.

Aside from the merits, the Defendants also argued that the preliminary injunction should be denied on the equities. The Defendants explained that the Plaintiffs' delay of more than two years before seeking a preliminary injunction showed that they had not been irreparably harmed. Doc. 582 at 26; Doc. 583 at 13-16. The Plaintiffs' allegation that they faced ongoing frustration of purpose and diversion of resources could not overcome this showing. Doc. 582 at 25. Nor could the Plaintiffs show that they were irreparably harmed because their members might be denied the right to vote, since the birthdate requirement only stopped them from voting absentee by mail. *Id.* The balance of equities also weighed against Defendants' given their lengthy delay and the State's interest in enforcing its laws. *Id.* at 27; Doc. 583 at 16. And the public interest weighed against removing a tool to ensure the integrity of Georgia's elections. Doc. 582 at 27.

The district court granted a preliminary injunction in part. The court found that the Plaintiffs had standing to pursue their claim only against the County Defendants.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

Doc. 613 at 6-17. Turning to the merits, the court found that the Plaintiffs were likely to prevail. *Id.* at 18-29. It thought that the key question was "whether requiring an individual's date of birth on the outer envelope is material to determining whether that individual is qualified to vote." *Id.* at 21. Since it found that the birthdate requirement was "not used to determine whether the individual is qualified to vote," the district court concluded that the requirement likely "violates the material Materiality Provision." *Id.* at 22-23. The district court announced that the Materiality Provision was not limited to the documents used in the "determination of whether a voter is qualified to vote" because, it said, that reading would render the Materiality Provision "meaningless." *Id.* at 28. Finally, the district court found that the birthdate requirement denied the right to vote because any person whose vote was not counted had been denied the right to vote. *Id.* at 25.

The district court also found that the remaining factors weighed in the Plaintiffs' favor. *Id.* at 29-36. On irreparable harm, the district court primarily found that the Plaintiffs had satisfied their burden because some of the members' "absentee ballots might be rejected." *Id.* at 31. Though delay weighs against a finding of irreparable harm, the district court dismissed the Plaintiffs' more-than-two-year delay because "their prospective harms would not have been imminent" had they filed earlier. *Id.* at 33. The district court then concluded that the balance of the equities and public interest weighed in favor of the Plaintiffs. It dismissed the State's interest in confirming the identity of voters because the State has other tools for that task. *Id.* at 34. And it found that the public interest favored "allowing qualified voters to vote." *Id.* at 35 (cleaned up). The

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

district court enjoined the County Defendants "from rejecting absentee ballots based on any error or omission relating to the Birthdate Requirement." *Id.* at 38.

The State Defendants and Republican Defendants timely appealed.

## SUMMARY OF THE ARGUMENT

**I. A.** The Plaintiffs are unlikely to prevail on the merits because the Materiality Provision does not apply to rules governing how ballots are cast. By its own terms, the Materiality Provision applies to determinations of a voter's qualifications. But Georgia's birthdate requirement isn't used to determine whether a voter is qualified to vote. It's a rule about *how* to cast a ballot, not *who* may cast a ballot. And the text of the Materiality Provision confirms that it reaches only the latter. The provision is about "determining" whether a voter is qualified. It applies only to steps like an "application, registration, or other act requisite to voting," not to mail-in ballots or envelopes.

The history of the Materiality Provision shows that the law is aimed at registration requirements. Congress enacted the provision in the 1964 amendments to the Civil Rights Act to address discriminatory registration practices in the South. It made extensive findings about those practices. It made no findings about ballot-casting rules. That omission is not trivial. Because Congress passed the Civil Rights Act under its Fifteenth Amendment enforcement power, it must justify its legislation with evidence, and tailor it to solving the discriminatory practices it sought to correct. Extending the Materiality Provision to ballot-casting rules would raise serious constitutional concerns, since Congress made no findings that such a measure was necessary to combat the discriminatory practices it observed. Worse still, preempting ballot-casting rules would transform the federal judiciary into a forum for election

10

disputes that have historically been the exclusive province of state courts. These constitutional and federalism concerns counsel against the district court's novel, overbroad interpretation.

Until very recently, courts applied the Materiality Provision only to rules governing voter registration. Just two years ago, the Third Circuit was the first court to adopt the Plaintiffs' novel interpretation of the statute. *See Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022). The Supreme Court vacated that decision. *Ritter v. Migliori*, 143 S. Ct. 297 (2022). When the Third Circuit reconsidered the issue, it renounced its initial decision, rejected the theory that the district court adopted here, and held that Pennsylvania's date requirement for absentee ballots does not violate the Materiality Provision. *Pa. State Conf. of NAACP Branches*, 97 F.4th at 129-35. Other courts have since rejected the notion that Congress preempted all state election rules—such as signatures, dates, and postmarks—just because they require information that doesn't bear on a voter's qualifications.

**B.** The Plaintiffs are unlikely to prevail on the merits for another, independent reason: the birthdate requirement does not deny anyone the right to vote. A person is denied the right to vote within the meaning of the Civil Rights Act only if she is erroneously deemed not "qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). A voter who fails to follow the rules for casting an absentee ballot—and then doesn't cure that failure—has not been denied the right to vote. Rather, "that individual's vote is not counted because he or she did not follow the rules for *casting a ballot*." *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental) (emphasis added); *see Ritter v. Migliori*, 143 S. Ct. 297 (2022).

11

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

**II.** Even if the district court were right on the merits, it abused its discretion by finding that the Plaintiffs had shown irreparable harm. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam). But the Plaintiffs waited over two years after filing their complaint to move for a preliminary injunction. And they let the November 2022 midterms pass without seeking preliminary relief. That delay undermines their claims that they will suffer irreparable harm absent an injunction. The district court thought the undue-delay principle worked differently in this election-law dispute. But the Supreme Court has said the principle "is as true in election law cases as elsewhere." *Id.* The district court erred in failing to hold the Plaintiffs accountable for their unexplained delay.

**III.** The equities and public interest also weigh in favor of reversing the preliminary injunction. The State has a strong interest in enforcing its democratically enacted election laws. Rules like the birthdate requirement help confirm the identity of absentee voters and prevent fraud. They also promote public confidence in elections and encourage voter participation. These interests far outweigh the minimal harm to the Plaintiffs, all of whom are private organizations pursuing parochial election interests. The Court should thus reverse the district court's preliminary injunction.

## STANDARD OF REVIEW

To obtain a preliminary injunction, the Plaintiffs must show four things: (1) a substantial likelihood of success on the merits, (2) imminent or ongoing irreparable harm, (3) the harm to the Plaintiffs outweighs any harm to the Defendants, and (4) the public interest favors relief. *Swain v. Junior*, 961 F.3d 1276, 1284-85 (11th Cir. 2020). A

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

"preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion as to these four prerequisites." *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1219 (11th Cir. 2023) (cleaned up). It is "never awarded as of right." *Swain*, 961 F.3d at 1284.

This Court "review[s] the grant of a preliminary injunction for abuse of discretion, reviewing any underlying legal conclusions *de novo* and any findings of fact for clear error." *Eknes-Tucker*, 80 F.4th at 1219 (citation omitted). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Id.* (citation omitted). Because the district court's decision is grounded in legal errors, review is *de novo. See City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 286 (5th Cir. 2017).

## ARGUMENT

### I.    The Plaintiffs are unlikely to prevail on the merits of their novel statutory claim.

The Materiality Provision applies to rules about *who* votes, not to rules about *how* they vote. This principle follows from the plain text of the provision:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election….

52 U.S.C. §10101(a)(2)(B). By its terms, the provision "governs voter qualification determinations," not "vote-casting rules that are divorced from the process of ascertaining whether an individual is qualified to vote." *Pa. State Conf. of NAACP*

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

*Branches*, 97 F.4th at 131, 134. And a voter who "did not follow the rules for casting a ballot" has not been "denied" the right to vote. *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Both are independent reasons that the Plaintiffs' novel statutory claim fails.

### A. The Materiality Provision applies to voter qualification determinations, not ballot-casting rules.

The Materiality Provision does not mandate that a ballot must be counted despite any error, unless that error goes to the voter's qualifications. The reading would be nonsensical: it would mean that a voter's true "vote" would have to be counted even though she marked the wrong candidate or failed to select any candidate at all. Congress enacted the Materiality Provision to halt discriminatory registration practices, not to eliminate ordinary ballot-casting rules. It reflected that distinction in the Materiality Provision's text, which reaches only errors or omissions on an "application, registration, or other act requisite to voting" that is used "in determining" a voter's qualifications. 52 U.S.C. §10101(a)(2)(B).

#### 1. The statutory text covers actions that determine whether a voter is qualified to vote.

Several textual features confirm that the Materiality Provision does not reach beyond documents used in determining a voter's qualifications. To begin, the Materiality Provision reaches only "error[s] or omission[s]" that are not "material in determining whether [an] individual is qualified under State law to vote." *Id.* "Read naturally," these words reach only errors and omissions on documents used when deciding "whether an individual is qualified to vote." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 131. The preposition "in" is commonly understood to mean "when" if it is followed by a gerund. *In*, Oxford English Dictionary (3d ed. 2021). In contrast, an

author who wanted to convey a meaning reaching beyond voter qualification would prohibit consideration of errors that are "immaterial 'to' whether an individual is qualified to vote." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 131. But Congress said "'in determining,' and that choice must mean something." *Id.* Courts should "ordinarily aim to give effect to every clause and word of a statute." *Polselli v. IRS*, 598 U.S. 432, 441 (2023) (cleaned up). And "[b]y using the words 'in determining,' Congress was expressing its intent that the Materiality Provision applies only when the state *is* 'determining' whether a person is qualified to vote." *Liebert v. Millis*, No. 3:23-cv-672, 2024 WL 2078216, at *13 (W.D. Wis. May 9, 2024).

This understanding is further confirmed by the Materiality Provision's limitation to "record[s] or paper[s] relating to any application, registration, or other act requisite to voting." 52 U.S.C. §10101(a)(2)(B). Each of the issues that a record must relate to- "application, registration, or other act requisite to voting"—concerns the decision whether a voter is qualified. No one disputes that "application" and "registration" refer to an initial voter-qualification determinations. *Application*, Webster's Dictionary (1913) ("the act of making request of soliciting"); *see also Application*, Black's Law Dictionary (4th ed. 1968) ("A putting to, placing before, preferring a request or petition to or before a person.").

The final item in this list, "other act requisite to voting," also refers to the voter-qualification process. It is a classic "statutory catch-all phrase" meant to sweep in other acts of the same kind as those listed. *Ball v. Chapman*, 289 A.3d 1, 38 n.11 (Pa. 2023) (Brobson, J., concurring in part, dissenting in part). "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores v. Adams*, 532 U.S. 105, 114-15 (2001) (cleaned up). And Congress's use of "*other* act requisite to voting" indicates that it considered the preceding items to be acts "requisite to voting." 52 U.S.C. §10101(a)(2)(B); *see Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 459 (2022) ("The use of 'other' in the catchall provision indicates that Congress considered the preceding items to be 'matters in foreign commerce.'"). "Those specific words limit the scope of the relevant paperwork in a way that coheres with the statute's voter qualification focus." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 132. That is, papers or records that concern "other act[s] requisite to voting" must be papers or records *like* an "application" or a "registration." As a whole, the list refers to "paperwork used for voter qualification determinations." *Id.*

The surrounding provisions in §10101(a) also show that the Materiality Provision sets rules governing voter qualifications. "Statutory construction" is a "holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). And the Materiality Provision is nestled between two paragraphs placing limits on the determination of voter qualifications: Paragraph (a)(2)(A) prevents state actors from discriminatory application of rules "in determining whether any individual is qualified under state law or laws to vote in any election." Paragraph (a)(2)(C) restricts state actors from "employ[ing] any literacy test as a qualification for voting in any election." These surrounding paragraphs "sandwich" the Materiality Provision and make it "clear" that Congress was setting rules that "govern[] voter qualification determinations." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 131. Indeed, paragraph

(a)(2)(A) is "particularly probative because it uses the same 'in determining' language" as the Materiality Provision. *Liebert*, 2024 WL 2078216, at *13. Thus, even if the Materiality Provision is "inartfully drafted," *id.* at *17, it appears "in a context that makes its meaning clear," *United Sav. Ass'n*, 484 U.S. at 371. The Materiality Provision simply does not apply to requirements that are not a part of the process "in determining" whether a voter is qualified to vote.

Georgia's birthdate requirement is not part of the determination of whether a voter is qualified, so the Materiality Provision does not reach it. By the time a voter receives and submits an absentee ballot, the State has already "determin[ed]" that the voter "is qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). To receive an absentee ballot, every voter must affirm that he or she "is a qualified Georgia elector and the facts presented on the application are true." Ga. Code §21-2-381(a)(1)(C)(i). That is, the voter has made it past the "voter qualification" stage of voting, which "deals with *who* votes." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 130.

The birthdate requirement is a ballot-casting rule: it answers "*how* ballots are cast by those previously authorized to vote." *Id.* Georgia law requires an absentee voter to fill out her absentee ballot, seal it in both the inner security envelope and the outer return envelope, and sign the oath on the outer envelope. Ga. Code §21-2-385(a). Then, "to verify that the absentee ballot was voted by the elector who requested the ballot," the voter must print her identification number and date of birth. *Id.* If the birthdate on the envelope does not match the voter's records, the registrar rejects the ballot. *Id.* §21-2-386(a)(1)(C). The registrar then contacts the voter, who has the opportunity to cure any error in the birthdate, through three days after the election. *Id.* Like other ballot-

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

casting rules, these rules are not used "'in determining whether such individual is qualified under State law to vote.'" *Ritter*, 142 S. Ct. at 1826 (Alito, J., dissental) (quoting 52 U.S.C. §10101(a)(2)(B)). They apply only "in determining whether a ballot should be counted." *Ritter*, 142 S. Ct. at 1826 (Alito, J., dissental).

The district court erred because it never recognized this distinction between voter-qualification rules and ballot-casting rules. Instead, the district court assumed that the Materiality Provision applied to ballot-casting rules and proceeded to assess whether the requirement was material to a voter's qualifications. In fact, the district court concluded that the Materiality Provision prohibits the birthdate requirement *because* it is a ballot-casting rule that occurs after a qualification determination. It explained that the birthdate requirement was not material because "to have received the ballot (and the envelope) in the first instance," the "determination" of whether the voter is qualified "has necessarily already taken place" and is "complete before a voter ever receives an absentee ballot." Doc. 613 at 21-22. But that assessment ignores the relevant question—whether the birthdate requirement "fall[s] within the scope of state laws that are subject to the material error provision." *Ball*, 289 A.3d at 38 (Brobson, J., concurring in part, dissenting in part). The district court never answered that first question.

In other words, the district court misread the statute to require that all information at all stages must be "used *to determine* whether the individual is qualified to vote." Doc. 613 at 22 (emphasis added). But again, "the text does not say the error must be immaterial 'to' whether an individual is qualified to vote. It uses the words 'in determining,' and that choice must mean something." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 131. The district court did not note this difference. Indeed, it consistently

18

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

referred to requirements that are material "to" whether a voter is qualified, Doc. 613 at 21-24, 27-28, even though the statute concerns materiality "in determining" whether a voter is qualified, 52 U.S.C. §10101(a)(2)(B).

The district court gave only one textual reason for its assumption that the Materiality Provision reaches ballot-casting rules. The court observed that "Congress defined 'voting' expansively." Doc. 613 at 27. Because "voting" includes "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted," 52 U.S.C. §10101(e), the district court reasoned that the Materiality Provision must extend to all paperwork required to vote.

The district court's argument, however, ignores the difference between "voting" and acts that are "requisite to voting." The statutory definition of "'vote' includes all action necessary to make a vote effective including … casting a ballot, and having such ballot counted." 52 U.S.C. §10101(e). "It is therefore awkward to describe the act of voting as 'requisite to the act of voting.'" *Ritter*, 142 S. Ct. at 1826 n.2 (Alito, J., dissental). The district court dodged that awkwardness by "read[ing] the word 'requisite' out of the statute." *Liebert*, 2024 WL 2078216, at *11. And "[e]ven the statute's definition of 'vote' distinguishes 'casting a ballot' from what precedes it in time: 'registration or other action required by State law prerequisite to voting.'" *Pa. State Conf. of NAACP Branches*, 97 F.4th at 135 (quoting 52 U.S.C. §10101(e)).

Beyond the text, the district court reasoned that the Materiality Provision must reach ballot-casting rules because it would be "essentially … meaningless" if it only governed voter-qualification. Doc. 613 at 28. According to the district court, applying

19

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

the Materiality Provision only to voter-qualification determinations would mean that a State could always avoid liability by insisting that a requirement is immaterial to voter qualification.

But a rule that governs registration and similar voter-qualification activities has meaning, even if it doesn't sweep in other steps of the voting process. Congress routinely applies separate rules to voter qualification and the process of voting. In fact, Congress enacted rules for voter-qualification, but not ballot-casting, in both of the provisions surrounding the Materiality Provision. 52 U.S.C. §10101(a)(2)(A), (C). And giving the Materiality Provision its proper scope does not empower a State to impose immaterial requirements; a State would still violate the provision if it rejected a registration application for an irrelevant misspelling. At the same time, it would leave States free to enact the kind of ballot-casting rules that have always been required for election administration.

In contrast, the district court's approach renders the Materiality Provision nonsensical. According to the district court, no vote can be rejected for an error or omission on a paper that is not material to whether the person casting the ballot is qualified to vote. That reading would make ordinary and necessary ballot-casting rules impossible. For example, a voter's failure to mark her preferred candidate on a ballot is an omission on a paper, but it has nothing to do with the voter's qualifications. The district court's reading would mean that a failure to count that unmarked ballot violates the Materiality Provision.

20

## 2. The history of the Materiality Provision and principles of constitutional avoidance confirm that the provision applies only to the voter-qualification process.

The enactment history of the Materiality Provision confirms that it is directed at registration and similar voter-qualification practices. Congress enacted the Materiality Provision to address discriminatory registration practices in the South. In 1961, the U.S. Commission on Civil Rights published a report on voting issues across the country. *See Voting: 1961 Commission on Civil Rights Report*, *supra*. The Commission highlighted registration difficulties faced by minorities in southern States. *Id.* at 21. Discriminatory practices by election officials were "aimed at reducing Negro registration." *Id.* at 43. In Louisiana, for example, registrars would arbitrarily refuse witnesses or valid government documents as identification. *Id.* at 50-53. They would reject applications for errors such as misspelling "the words 'October' and 'Democratic.'" *Id.* at 55. They would force applicants to calculate their age in exact number of days, and "some [registrars] would exclude, others include, the day on which the application is filed." *Id.* at 56-57. They would quiz applicants on "a reasonable interpretation of [a] specific clause of the constitution," and the registrars would use their "own discretion in determining whether or not the applicant meets the constitutional test." *Id.* at 58. Sometimes, registrars wouldn't tell the applicant what the error was, or even that they denied the application. *Id.* at 54, 57. The Commission observed that these practices resulted in single-digit registration rates among black citizens in the South. *Id.* at 71-72, 101-11.

The House Committee Report tells the same story. "Testimony" showed that black citizens were "given long and difficult parts of the Constitution to read, transcribe, and analyze," while white citizens were "assigned easy sections." H.R. Rep. No. 88-914,

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

*reprinted in* 1964 U.S.C.C.A.N. 2391, 2392, 2491. "Registrars" would "aid white registrants" but "ignore" black applicants. *Id.* The report made extensive findings about "registration techniques" and "registration statistics." *Id.* at 2390, 2492. Throughout the report, "references to 'registration' and its many permutations abound." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 132. The report contains no such references to the rules for casting ballots.

Extending the Materiality Provision beyond these congressional findings would create serious constitutional problems. Congress passed the 1964 amendments under its Fifteenth Amendment enforcement power. *United States v. Mississippi*, 380 U.S. 128, 138 (1965). The Fifteenth Amendment prohibits States from denying the right to vote "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, §1. Congress can "enforce" that prohibition "by appropriate legislation." *Id.*, §2. But Congress lacks power to redefine "the substance" of that amendment. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). So there "must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 520. Courts look to the "record" compiled by Congress to determine whether the legislation is congruent and proportional. *Id.* at 530-32. And in enacting the 1964 amendments, Congress specifically found that the country faced "the same picture of marginal Negro registration which we faced in 1957." 1964 U.S.C.C.A.N. at 2490.

Congress compiled a record on discrimination in registration to support the 1964 Amendments. It sought to curb discriminatory "registration techniques" employed by "registrars" in the Jim Crow South. *Id.* at 2490-92. As a part of that amendment, the Materiality Provision "was intended to address the practice of requiring unnecessary

22

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

information for *voter registration* with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to *disqualify* potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (emphasis added).

But the district court applied the provision far beyond the registration ills that Congress addressed. The record is bare of any findings that Congress sought to override ordinary ballot-casting rules—let alone neutral, nondiscriminatory rules. Applying the Materiality Provision beyond registration to preempt ordinary state rules for casting a ballot would extend the provision beyond the "exceptional conditions" that Congress identified. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 211 (2009). In doing so, it would transform the provision into "extraordinary legislation otherwise unfamiliar to our federal system." *Id.* This Court should avoid constructions that create "serious doubt" about the statute's "constitutionality" when another "plausible" construction is available. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). That applying the Materiality Provision beyond voter-qualification rules would violate the Fifteenth Amendment is yet another reason to reject the district court's interpretation of the statute.

### 3. Caselaw confirms that the Materiality Provision has long been understood to apply to voter-qualification.

For decades, courts understood that the Materiality Provision applies to voter registration. In fact, soon after Congress passed the 1964 amendments, courts recognized that the Materiality Provision banned discriminatory enforcement practices like "disqualifying an applicant who failed to list the exact number of months and days

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

in his age." *Condon v. Reno*, 913 F. Supp. 946, 950 (D.S.C. 1995). Decades later, courts observed that "the jurisprudence appears to demonstrate that [§10101] is an anti-discrimination statute designed to eliminate the discriminatory practices of registrars through *arbitrary enforcement* of registration requirements." *McKay v. Altobello*, No. 1:96-cv-3458, 1996 WL 635987, at *1 (E.D. La. 1996) (emphasis added); *see also Condon*, 913 F. Supp. at 950 (noting Congress enacted the Materiality Provision "to sweep away such tactics as disqualifying an applicant who failed to list the exact number of months and days in his age").

Decisions in this Circuit reflected the same understanding. This Court observed that the Materiality Provision "prohibits states from *disqualifying* potential voters based on their failure to provide information not relevant to determining their eligibility to vote." *Schwier*, 340 F.3d at 1287 (emphasis added). District courts heeded this Court's instruction, ruling that the Materiality Provision was "designed to eliminate practices that could encumber an individual's ability to *register* to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 1994) (citing *Schwier*, 340 F.3d at 1297). Until the district court granted the preliminary injunction in this case, district courts in this Circuit rejected claims that the Materiality Provision preempted rules governing the casting of ballots. *See id.* at 1373 (ruling that rejecting absentee ballots for invalid postmarks did not violate the Materiality Provision "[b]ecause the error and omission … did not occur in relationship to a determination of the Plaintiffs' eligibility to vote").

Only recently have any courts departed from this understanding, but those decisions have not survived review. The Third Circuit briefly adopted the Plaintiffs' view that the Materiality Provision preempts ordinary ballot-casting rules. *See Migliori*,

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

36 F.4th at 164. The Supreme Court vacated that decision. *See Ritter*, 143 S. Ct. 297. The case became moot shortly after the Third Circuit's decision, but the Court nonetheless granted certiorari to ensure that the Third Circuit's decision would not stand as a precedent. *Id.* Later, another district court in the Third Circuit repeated the same error in a decision relied on by the district court here. This time, however, the Third Circuit followed the Supreme Court's lead and held that "it makes no sense to read the Materiality Provision to prohibit enforcement of vote-casting rules that are divorced from the process of ascertaining whether an individual is qualified to vote." *Pa. State Conf. of NAACP Branches*, 97 F.4th at 134.

Following the Third Circuit is consistent with this Court's precedents. So far, this Court has applied the Materiality Provision only at the voter-registration stage. In *Florida State Conference of NAACP v. Browning*, this Court held that Florida's verification processes for voter registration did not violate the Materiality Provision. 522 F.3d 1153, 1175 (11th Cir. 2008). It reasoned that another federal law required the same information (identification numbers), so that information was necessarily "material" to voter registration under state law. *Id.* at 1174-75. And in *Schwier v. Cox*, this Court held that Georgia's voter registration forms could not require social security numbers under the Materiality Provision because that information was prohibited by the federal Privacy Act. 439 F.3d 1285 (11th Cir. 2006). *Schwier* and *Browning* are a "mirror image" of each other. *Browning*, 522 F.3d at 1174 n.22. Information *must be* material if federal law requires it (*Browning*), and information *cannot be* material if federal law prohibits it (*Schwier*). *See Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005), *aff'd* 439 F.3d 1285. Both cases applied to voter registration requirements. This Court has never had the

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

occasion to address whether the Materiality Provision preempts ordinary ballot-casting rules. Now it does, and it should follow the Third Circuit.

Despite these precedents, the district court thought that "[o]ther courts have applied" the Materiality Provision to preempt ballot-casting rules. Doc. 613 at 23 n.15. But none of those courts resolved the arguments raised here. The district court wrote that "the Supreme Court of Pennsylvania determined that the practice of rejecting absentee ballots because the return envelope was incorrectly dated or undated violated the Materiality Provision." *Id.* In fact, the Supreme Court of Pennsylvania divided evenly and "issued no decision on that question." *Ball*, 289 A.3d at 9 (majority op.). The materiality-provision passage that the district court cited lacked majority support. *See id.* at 23-28. The district court also cited two district court opinions, but one of those cases assumed that the Materiality Provision applies to all election rules and began its analysis by asking whether "an elector's year of birth is … material to determining the eligibility of an absentee voter." *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018). A later case merely "adopt[ed] the rationale" of *Martin* "for the sake of statewide uniformity," with no further analysis. *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1341 (N.D. Ga. 2018). Those decisions provide no basis for rejecting a textual argument not addressed, and this Court is not bound by them anyway. The district court's order stands alone as the only surviving decision extending the Materiality Provision to ballot-casting rules.

### B.    The birthdate requirement does not deny anyone the right to vote.

Even if the Materiality Provision applied to ballot-casting rules, it would not prohibit the birthdate requirement for another reason. If a state official does not "deny"

26

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

a person's "right … to vote," the Materiality Provision doesn't apply. 52 U.S.C. §10101(a)(2)(B). A voter who fails to follow the rules for casting an effective absentee ballot has not been denied the right to vote. She has exercised her right to vote, just ineffectively (until she can cure the mistake). "Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 669 (2021). These rules serve "the State's interest in protecting the integrity and reliability of the electoral process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (op. of Stevens, J.). Rejecting a ballot that fails to comply with these rules is "not the denial" of the right to vote. *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Instead, "the failure to follow those rules constitutes the forfeiture of the right to vote." *Id.*; *see also Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973) (A statute that "merely imposed a time deadline" on newly registered voters to enroll in a political party did not "disenfranchise" those voters because "it is clear that they could have [enrolled], but chose not to.").

A person is denied the right to vote under the Materiality Provision if that person is erroneously deemed not "qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). But "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.' Rather, that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). Because a voter who fails to date her ballot remains "qualified under State law to vote," the exclusion of her ballot is not a "denial" of her right to vote within the meaning of the provision. Her *right to vote* is fully intact, but she, like every other voter, must follow the rules to ensure her ballot is counted.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

The district court said this principle "does not find support" in the text. Doc. 613 at 24. But the court hardly looked—it merely referenced the "statutory definition of 'voting,'" *id.* at 25, which "does not get us far," *Pa. State Conf. of NAACP Branches*, 97 F.4th at 133. A broad definition of "voting" does not mean that the "right to vote" has been violated any time a ballot is not counted. The Materiality Provision cross-references the definition of "vote" in the Civil Rights Act of 1960. *See* Pub. L. No. 86-449, §601, 74 Stat. 86, 91 (1960); 52 U.S.C. §10101(a)(3) ("the term 'vote' shall have the same meaning as in subsection (e)"). And the 1960 Act authorized courts to issue an "order declaring" a person "qualified to vote" upon a finding that the person was "denied under color of law the opportunity to register to vote or otherwise to qualify to vote," or was "found not qualified to vote." 52 U.S.C. §10101(e). That is, the 1960 Act "authorized courts to register voters in areas of systematic discrimination." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). That law has always been about protecting the ability to "register to vote" or "qualify to vote." And once a person is found "qualified to vote" by a court order, 52 U.S.C. §10101(e), the voter must still show up to the polls or apply for an absentee ballot, follow the rules for casting the ballot, and *vote*. The failure to follow through on those steps is a "forfeiture of the right to vote, not the denial of that right." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental).

The district court's reading is untenable. It would mean that anytime a voter's ballot is rejected because she failed to follow the rules for voting, she is "den[ied] the right … to vote." 52 U.S.C. §10101(a)(2)(B). But "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under [the Materiality Provision]." *Vote.Org v. Callanen*,

39 F.4th 297, 306 n.6 (5th Cir. 2022). That reading would mean that "virtually every rule governing how citizens vote would [be] suspect." *Id.* It would "tie state legislatures' hands in setting voting rules unrelated to voter eligibility" and lead to absurd results. *Pa. State Conf. of NAACP Branches*, 97 F.4th at 134. For example, election officials would be unable to reject ballots that include votes for too many candidates. They'd be forced to accept ballots that were sent without the required secrecy envelope. And they'd be unable to enforce rules about signatures, dates, oaths, and even postmarks just because those rules don't neatly align with a voter's qualifications to vote. But those procedures serve different, entirely legitimate purposes, "and it would be absurd to judge the validity of [those] voting rules based on whether they are material to eligibility." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental).

## II.  The Plaintiffs' undue delay confirms that they are not facing irreparable harm.

The Plaintiffs' delay of over two years in moving for a preliminary injunction shows that they are not facing irreparable harm. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 585 U.S. at 159. Delay "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also Adventist Health Sys. v. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 806 (11th Cir. 2021) (Delay "refuted … allegations of irreparable harm.").

The Plaintiffs waited through an entire election cycle before moving for a preliminary injunction. The Plaintiffs filed their complaints against Georgia's birthdate requirement in March of 2021. Doc. 1, No. 1:21-cv-1284; Doc. 1, No. 1:21-cv-1259.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

They amended those complaints to add the materiality-provision claims just a couple of months later. *See* Doc. 83 at 130-31, No. 1:21-cv-1284; Doc. 35 at 83-84, No. 1:21-cv-1259. Those cases were consolidated with other legal challenges to Georgia Senate Bill 202. Other Plaintiffs in the consolidated case moved to preliminarily enjoin the line-warming provisions for the 2022 November midterm elections, claiming that those provisions would cause irreparable harm. *See* Doc. 171. But the Plaintiffs did not move to enjoin the birthdate requirement for the 2022 elections. Their failure to request for the last election the relief they demand is necessary for this election indicates "that the harm would not be serious enough to justify a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 805 (quoting Wright & Miller, 11A Fed. Prac. & Proc., §2948.1 & n.13 (3d ed. 2013)). At the very least, they should have sought relief for the 2024 elections immediately after the November 2022 elections. Instead, they waited six months *after that* to file their motion.

Far more modest delays have defeated requests for a preliminary injunction. This Court found that a "five-month delay" supported denial of a preliminary injunction. *Wreal*, 840 F.3d at 1248. A delay "even of only a few months," the Court explained, "militates against" a preliminary injunction. *Id.* This Court should reach the same conclusion based on the Plaintiffs' unexplained six-month delay.

The Plaintiffs' delay weighs especially heavy against a preliminary injunction because the issue they raise is purely legal. As the district court's opinion shows, there was no need to develop facts or take discovery before moving for relief under the Materiality Provision. In any event, ongoing discovery does not excuse a party for delay in seeking for a preliminary injunction. *Benisek* confirmed that privilege disputes that

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

"delayed the completion of … discovery … d[id] not change the fact that plaintiffs could have sought a preliminary injunction much earlier." 585 U.S. at 160. And delay is especially unjustified when "the preliminary-injunction motion relied exclusively on evidence that was available" earlier. *Wreal*, 840 F.3d at 1248-49 (rejecting preliminary-injunction motion based on evidence "available" to the moving party "at the time it filed its complaint").

Despite their delay, the district court found that the Plaintiffs were facing irreparable harm. But neither of its two reasons can explain away the Plaintiffs' delay. The court first concluded that the Plaintiffs were facing ongoing diversion of resources. Doc. 613 at 30-31. That argument would have been just as true two years ago. After all, the Plaintiffs' argument was that they will "continue" to divert resources. *Id.* at 31. Yet the Plaintiffs waited more than two years to seek preliminary relief. The district court next asserted that some of the Plaintiffs' members "might" have absentee ballots rejected because they failed to fill in their birthdate. That argument also would have been equally available when the Plaintiffs first filed in 2021. But the Plaintiffs waited more than two years—and through the entire 2022 election cycle—before seeking relief.

The district court dismissed these failures because it believed the Plaintiffs "did not unreasonably delay." Doc. 613 at 32. It gave two reasons. Both are wrong. First, the court thought that because the "Plaintiffs are simultaneously constrained by the *Purcell* principle," they could not have filed their motions "any later" than they did. Doc. 613 at 32-33. But whether the Plaintiffs could have filed "later" is irrelevant. Reasonable diligence requires plaintiffs to move for preliminary relief as soon as they have

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

knowledge of the facts giving rise to their claim. *See Benisek*, 585 U.S. at 159 (holding that plaintiffs unduly delayed because "the delay largely arose from a circumstance within plaintiffs' control: namely, their failure to plead the claims giving rise to their request for preliminary injunctive relief until 2016").

The Plaintiffs let years and federal elections pass without ever moving for preliminary relief. *See id.* at 159 (finding undue delay when plaintiffs moved "three general elections" and "over three years after the plaintiffs' first complaint was filed"). The district court cited no support for its rationale that the reasonable-diligence requirement applies differently in election cases because of *Purcell v. Gonzalez*, which constrains judicial authority to *enjoin* election laws as an election draws nearer. 549 U.S. 1, 4 (2006). *Benisek* itself was an election-law case. The district court didn't even cite it. But the reasonable-diligence standard "is as true in election law cases as elsewhere." *Benisek*, 585 U.S. at 159 (collecting cases). And, as in *Benisek*, the "plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request." *Id.* at 160.

Second, the district court reasoned that "[h]ad Plaintiffs filed their motions earlier, their prospective harms would not have been imminent." Doc. 613 at 33. That reasoning eviscerates the reasonable-diligence requirement. "A preliminary injunction requires showing 'imminent' irreparable harm." *Wreal*, 840 F.3d at 1248. But no rule permits plaintiffs to build up their evidence of "imminence" by delaying their motion for preliminary relief. In fact, that's why the reasonable-diligence requirement exists. "[T]he very idea of a preliminary injunction is premised on the need for speedy and urgent action." *Id.* When plaintiffs fail "to act with speed or urgency in moving for a

preliminary injunction," it "necessarily undermines a finding of irreparable harm." *Id.*
But the district court flipped that principle on its head, holding that the Plaintiffs' delay
*supports* irreparable harm because the election is more "imminent" today than it was
years ago. Doc. 613 at 33. That rationale misapplies this Court's reasonable-diligence
standard and is reason enough to reverse. *See Wreal*, 840 F.3d at 1248.

## III. The equities and public interest weigh in favor of reversing the preliminary injunction.

The Plaintiffs' delay also weighs against them on the equities. The "balance of
equities … tilt[s] against" a party who cannot show reasonable diligence. *Benisek*, 585
U.S. at 158. In *Benisek*, the Supreme Court rejected the delayed preliminary injunctive
relief by looking to the balance of the equities and public interest. 585 U.S. at 158. This
Court should find the same here: the Plaintiffs' "unreasonable delay … means that the
balance of equities favors the denial of a preliminary injunction." *Adventist Health Sys.*,
17 F.4th at 806.

The equities pile on against the Plaintiffs. "When the district court bars 'the State
from conducting this year's elections'" according to the Legislature's valid,
democratically-enacted rules, "an injunction would 'seriously and irreparably harm the
State.'" *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020) (quoting
*Abbott v. Perez*, 585 U.S. 579, 602 (2018)).

On top of its interest in enforcing its laws, the State has strong interests in
conducting a fair and orderly election. The Georgia Legislature enacted the birthdate
requirement to help "confirm the identity of the voter" who casts an absentee ballot.
Ga. Code §21-2-381(a)(1)(C)(i). It replaced signature-matching with a check on the

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

voter's ID number and date of birth—two numbers readily available to the voter, but not to others. These administrative and election-integrity concerns are "weighty reasons that warrant judicial respect." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 34 (2020) (Kavanaugh, J., concurral); *see also League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 81 F.4th 1328, 1332 (11th Cir. 2023) (en banc) (recognizing "election security" as a legitimate interest supporting election regulation). Enjoining the birthdate requirements thwarts those legitimate goals.

Public confidence is also an essential ingredient in both voter turnout and election integrity. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cnty. Democratic Central Comm.*, 489 U.S. 214, 231 (1989). And while "public confidence" is "closely related to the State's interest in preventing voter fraud," it also has "independent significance, because it encourages citizen participation in the democratic process." *Crawford*, 553 U.S. at 197 (op. of Stevens, J.). "'[S]afeguards'" such as Georgia's birthdate requirement that "'exist to deter or detect fraud or to confirm the identity of voters'" help "'inspire public confidence.'" *Id.* (quoting *Building Confidence in U.S. Elections* §2.5 (Sept. 2005)). Enjoining them undermines that confidence.

Meanwhile, any burden on the Plaintiffs is minimal. The Plaintiffs cannot cite a loss of the right to vote since their members can "take advantage of any of the other avenues that Georgia has made available to ensure that voters are able to cast their ballots." *New Ga. Project*, 976 F.3d at 1283-84. And the downstream financial or mission-related harms to the Plaintiffs—all private organizations—are a degree further removed from those "usual burdens of voting." *Brnovich*, 594 U.S. at 678.

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## CONCLUSION

This Court should reverse the district court's preliminary injunction.

Dated: July 1, 2024                    Respectfully submitted,

                                       */s/ Gilbert C. Dickey*
William Bradley Carver, Sr.            Gilbert C. Dickey
Baxter D. Drennon                      Conor D. Woodfin
HALL BOOTH SMITH, P.C.                 CONSOVOY MCCARTHY PLLC
191 Peachtree Street NE, Suite 2900    1600 Wilson Boulevard, Suite 700
Atlanta, Georgia 30303                 Arlington, VA 22209
(404) 954-5000                         (703) 243-9423
BCarver@hallboothsmith.com             gilbert@consovoymccarthy.com
BDrennon@hallboothsmith.com            conor@consovoymccarthy.com

                                       Patrick Strawbridge
                                       CONSOVOY MCCARTHY PLLC
                                       Ten Post Office Square
                                       8th Floor South PMB #706
                                       Boston, MA 02109
                                       (703) 243-9423
                                       patrick@consovoymccarthy.com

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 9,902 words as counted by the word-processing system used to prepare the document.

*/s/ Gilbert C. Dickey*

36

*In re: Georgia Senate Bill 202*, Nos. 23-13085 & 23-13095

## CERTIFICATE OF SERVICE

I certify that on July 1, 2024, I served this brief by electronically filing it with this Court's ECF system, which will serve everyone requiring notice.

*/s/ Gilbert C. Dickey*

37