No. 23-13085

# In the United States Court of Appeals for the Eleventh Circuit

---

IN RE: GEORGIA SENATE BILL 202

---

**BRIEF OF AMICUS CURIAE
THE HONEST ELECTIONS PROJECT
IN SUPPORT OF APPELLANTS AND REVERSAL**

---

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
NO. 1:21-MI-55555-JPB

---

JASON BRETT TORCHINSKY
EDWARD M. WENGER
ZACHARY D. HENSON

*jtorchinsky@holtzmanvogel.com*
*zhenson@holtzmanvogel.com*
*emwenger@holtzmanvogel.com*

(202) 737-8808 (phone)

HOLTZMAN VOGEL
BARAN TORCHINSKY &
JOSEFIAK PLLC

2300 N Street NW,
Suite 643A
Washington, DC 20037

(540) 341-8809 (facsimile)

*Counsel for Amicus Curiae
the Honest Elections Project*

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

## CERTIFICATE OF INTERESTED PERSONS
## & CORPORATE DISCLOSURE STATEMENT

Amicus Curiae the Honest Elections Project certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1.  Abbott, Robert, *Defendant*;

2.  Abudu, Honorable Nancy, *Former Attorney for Plaintiff-Appellees*;

3.  ACLU Foundation of Georgia, *Counsel for Plaintiff-Appellees*;

4.  ACLU Foundation of Georgia, Inc., *Counsel for Plaintiff-Appellees*;

5.  Adegbile, Debo P., *Counsel for Plaintiff-Appellees*;

6.  Aden, Leah, *Counsel for Plaintiff-Appellees*;

7.  Advancement Project, *Counsel for Plaintiff-Appellees*;

8.  Ameri, Mana, *Counsel for Plaintiff-Appellees*;

9.  American Civil Liberties Union Foundation of Georgia, *Counsel for Plaintiff-Appellees*;

10. American Civil Liberties Union Foundation, Inc., *Counsel for Plaintiffs- Appellees*;

11. Andrews, Wanda, *Defendant*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

12.   Aquino, Nora, *Plaintiff-Appellee*;

13.   Asian Americans Advancing Justice-Asian Law Caucus,

      *Counsel for Plaintiff-Appellees*;

14.   Asian Americans Advancing Justice-Atlanta, *Plaintiff-Appellee*;

15.   Augusta Georgia Law Department, *Counsel for Defendant*;

16.   Ausburn, Deborah, *Counsel for State Defendant-Appellants*;

17.   Awuku, George, *Defendant*;

18.   Banks, Marques, *Counsel for Plaintiff-Appellees*;

19.   Banter, James, *Counsel for Defendant*;

20.   Bao, Judy, *Counsel for Plaintiff*

21.   Barkdull, Annika Boone, *Counsel for State Defendant-Appellants*;

22.   Barnes, Sherry, *Defendant*;

23.   Baron, Noah, *Counsel for Plaintiffs*

24.   Barrett, James E., *Counsel for State Defendant-Appellants;*

25.   Barron, Richard, *Defendant*;

26.   Bartolomucci, H. Christopher, *Counsel for State Defendant-Appellants*;

27.   Beausoleil, William, *Counsel for Plaintiff-Appellees*;

28.   Beck Owen & Murray, *Counsel for Defendant*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

29.    Betakes, Steven, *Counsel for Intervenor-Defendants*;

30.    Belichick, Joseph, *Counsel for Plaintiff-Appellees*;

31.    Bell, Jordan, *Counsel for Defendant*;

32.    Bennette, Matlacha, *Counsel for Plaintiff-Appellees*;

33.    Bergethon, Ross W., *Counsel for State Defendant-Appellants*

34.    Black Voters Matter Fund, *Plaintiff-Appellee*;

35.    Blender, Matthew, *Defendant*;

36.    Bloodworth, Kristin, *Counsel for Defendant*;

37.    Boulee, Honorable J. P., *United States District Court Judge*;

38.    Bowman, Brad, *Counsel for Defendant*;

39.    Boyle, Donald, *Counsel for State Defendant-Appellants*;

40.    Broder, Karl, *Counsel for Defendant*;

41.    Brooks, Jessica, *Defendant*;

42.    Brooks, Sofia, *Counsel for Plaintiff-Appellees*;

43.    Brown, Marcia, *Defendant*;

44.    Bruning, Stephen, *Defendant*;

45.    Bruning, Steven, *Defendant*;

46.    Bryan, Bennett, *Counsel for Defendant*;

47.    Burwell, Kaye, *Counsel for Defendant*;

48.    Campbell-Harris, Dayton, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

49. Carr, Christopher M., Attorney General of the State of Georgia, *Counsel for State Defendant-Appellants*;

50. Carver, William, *Counsel for Intervenor-Defendants*;

51. Cathey, Thomas, *Counsel for Defendant*;

52. Chalmers, Adams, Backer & Kaufman, LLC, *Counsel for Defendant*;

53. Chatham County Attorney, *Counsel for Defendant*;

54. Chatham County Board of Elections, *Defendant*;

55. Chatham County Board of Registrars, *Defendant*;

56. Clarke County Board of Elections and Voter Registration, *Defendant*;

57. Clayton County Board of Elections and Registration, *Defendant*;

58. Cobb County Board of Elections and Registration, *Defendant*;

59. Cochran, Ken, *Defendant*;

60. Columbia County Board of Elections, *Defendant*;

61. Columbia County Board of Registrars, *Defendant*;

62. Common Cause, *Plaintiff-Appellee*;

63. Consovoy McCarthy PLLC, *Counsel for Intervenor-Defendants*;

64. Cramer, Raisa, *Counsel for Plaintiff-Appellees*;

65. Crawford, Teresa, *Defendant*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

66. Crowell & Moring, LLP, *Counsel for Plaintiff-Appellees*;

67. Cushman, Ann, *Defendant*;

68. Cusick, John, *Counsel for Plaintiff-Appellees*;

69. Dasgupta, Riddhi, *Counsel for Defendant-Appellants*;

70. Dave, Charles, *Defendant*;

71. Davenport, Jennifer, *Counsel for Defendant*;

72. Davis Wright Tremaine LLP, *Counsel for Plaintiff-Appellees*;

73. Davis, Britton, *Counsel for Plaintiff-Appellees*;

74. Day, Stephen, *Defendant*;

75. DeKalb County Board of Registrations and Elections, *Defendant*;

76. DeKalb County Law Department, *Counsel for Defendant*;

77. Delta Sigma Theta Sorority, Inc., *Plaintiff-Appellee*;

78. Denmark, Emilie, *Counsel for Defendant*;

79. Dentons US LLP, *Counsel for Intervenor-Defendants*;

80. Deshazior, Zurich, *Defendant*;

81. DeThomas, Courtney, *Counsel for Plaintiff-Appellees*;

82. Dianis, Judith, *Counsel for Plaintiff-Appellees*;

83. Dickey, Gilbert, *Counsel for Intervenor-Defendants*;

84. Dicks, Terence, *Defendant*;

85. Dimmick, Brian, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

86.     DiStefano, Don, *Defendant*;

87.     Doss, Travis, *Defendant*;

88.     Dozier, Shauna, *Defendant*;

89.     Drennon, Baxter, *Counsel for Intervenor-Defendants*;

90.     Duffey, William, Jr., *State Defendant-Appellant*;

91.     Duffie, Wanda, *Defendant*;

92.     Durbin, Jauan, *Plaintiff-Appellee*;

93.     Durso, Katherine, *Defendant*;

94.     Edwards, Gregory, District Attorney for Dougherty County, *State Defendant-Appellant*;

95.     Elias Law Group LLP, *Counsel for Plaintiff-Appellees*;

96.     Ellington, Thomas, *Defendant*;

97.     Enjeti-Sydow, Anjali, *Plaintiff-Appellee*;

98.     Evans-Daniel, Karen, *Defendant*;

99.     Evans, James, *Counsel for Defendant*;

100.    Evans, Rachel, *Counsel for Plaintiff-Appellees*;

101.    Eveler, Janine, *Defendant*;

102.    Falk, Donald M., *Counsel for State Defendant-Appellants*;

103.    Fambrough, Willa, *Defendant*;

104.    Faransso, Tania, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

105.  Farrell, Gregory, *Counsel for Plaintiff-Appellees*;

106.  Feldsherov, Ilya, *Counsel for Plaintiff-Appellees*;

107.  Fenwick & West, LLP, *Counsel for Plaintiff-Appellees*;

108.  Field, Brian J., *Counsel for State Defendant-Appellants*;

109.  First Congregational Church, United Church of Christ

110.  Incorporated, *Plaintiff-Appellee*;

111.  Fogelson, Matthew, *Counsel for Plaintiff-Appellees*;

112.  Forsyth County Board of Voter Registrations and Elections, *Defendant*;

113.  Fortier, Lucas, *Counsel for Plaintiff-Appellees*;

114.  Foster, Mikayla, *Counsel for Plaintiff-Appellees*;

115.  Freeman Mathis & Gary, LLP, *Counsel for Defendant*;

116.  Fulton County Attorney's Office, *Counsel for Defendant*;

117.  Fulton County Registration and Elections Board, *Defendant*;

118.  Galeo Latino Community Development Fund, Inc., *Plaintiff-Appellee*;

119.  Gammage, Keith, *Defendant*;

120.  Garabadu, Rahul, *Counsel for Plaintiff-Appellees*;

121.  Gartland, Pat, *Defendant*;

122.  Gay, Nancy, *Defendant*;

123. Geiger, Debra, *Defendant*;

124. Georgia Adapt, *Plaintiff-Appellee*;

125. Georgia Advocacy Office, *Plaintiff-Appellee*;

126. Georgia Coalition for the People's Agenda, Inc., *Plaintiff-Appellee*;

127. Georgia Department of Law, *Counsel for State Defendant-Appellants*;

128. Georgia Latino Alliance for Human Rights, Inc., *Plaintiff-Appellee*;

129. Georgia Muslim Voter Project, *Plaintiff-Appellee*;

130. Georgia Republican Party, Inc., *Intervenor-Defendant*;

131. Georgia State Conference of the NAACP, *Plaintiff-Appellee*;

132. Georgia State Election Board, *Defendant*;

133. Ghazal, Sara, *State Defendant-Appellant*;

134. Gibbs, Fannie, *Plaintiff-Appellee*;

135. Gillon, Thomas, *Defendant*;

136. Givens, Diane, *Defendant*;

137. Gossett, David, *Counsel for Plaintiff-Appellees*;

138. Green, Tyler, *Counsel for Intervenor-Defendants*;

139. Greenbaum, Jon, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

140.  Greenberg Traurig, LLP, *Counsel for Defendant*;

141.  Groves, Angela, *Counsel for Plaintiff-Appellees*;

142.  Gwinnett County Board of Registrations and Elections, *Defendant*;

143.  Gwinnett County Department of Law, *Counsel for Defendant*;

144.  Hall Booth Smith, P.C., *Counsel for Intervenor-Defendants*;

145.  Hall County Board of Elections and Registration, *Defendant*;

146.  Hall County Government, *Counsel for Defendant*;

147.  Hall, Dorothy, *Defendant*;

148.  Hall, John, *Counsel for Intervenor-Defendants*;

149.  Hamilton, Brittni, *Counsel for Plaintiff-Appellees*;

150.  Hancock, Jack, *Counsel for Defendant*;

151.  Hart, Ralph, *Counsel for Defendant*;

152.  Hart, Twyla, *Defendant*;

153.  Hasselberg, Emily, *Counsel for Plaintiff-Appellees*;

154.  Hayes, Vilia, *Counsel for Plaintiff-Appellees*;

155.  Haynie, Litchfield & White, PC, *Counsel for Defendant*;

156.  Hazard, Joel, *Defendant*;

157.  Heard, Bradley, *Counsel for Plaintiff-Appellees*;

158.  Heckmann, Elizabeth A., *Counsel for Plaintiffs*

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

159.  Heimes, Marianne, *Defendant*;

160.  Henseler, James, *Counsel for Plaintiff-Appellees*;

161.  Herren, Thomas, *Counsel for Plaintiff-Appellees*;

162.  Hiatt, Alexandra, *Counsel for Plaintiff-Appellees*;

163.  Ho, Dale, *Counsel for Plaintiff-Appellees*;

164.  Hodge, Malinda, *Defendant*;

165.  Houk, Julie, *Counsel for Plaintiff-Appellees*;

166.  Hoyos, Luis, *Counsel for Plaintiff-Appellees*;

167.  Hughes Hubbard & Reed, LLP, *Counsel for Plaintiff-Appellees*;

168.  Hughes, Aileen, *Counsel for Plaintiff-Appellees*;

169.  Hull Barrett, PC, *Counsel for Defendant*;

170.  Ingram, Randy, *Defendant*;

171.  Jacoutot, Bryan, *Counsel for State Defendant-Appellants*;

172.  Jaffe, Erik S., *Counsel for State Defendant-Appellants*;

173.  Jahangiri, Mahroh, *Counsel for Plaintiff-Appellees*;

174.  Jaikumar, Arjun, *Counsel for Plaintiff-Appellees*;

175.  James Bates Brannan Groover LLP, *Counsel for Defendant*;

176.  Jarrard & Davis, LLP, *Counsel for Defendant*;

177.  Jasrasaria, Jyoti, *Counsel for Plaintiff-Appellees*;

178.  Jaugstetter, Patrick, *Counsel for Defendant*;

179. Jedreski, Matthew, *Counsel for Plaintiff-Appellees*;

180. Jester, Alfred, *Defendant*;

181. Jester, Nancy, *Defendant*;

182. Jhaveri, Sejal, *Counsel for Plaintiff-Appellees*;

183. Johnson, Aaron, *Defendant*;

184. Johnson, Ben, *Defendant*;

185. Johnson, Darlene, *Defendant*;

186. Johnson, Melinda, *Counsel for Plaintiff-Appellees*;

187. Johnston, Janice W., *State Defendant-Appellant*;

188. Joiner, Amelia, *Counsel for Defendant*;

189. Kanu, Nkechi, *Counsel for Plaintiff-Appellees*;

190. Kaplan, Mike, *Defendant*;

191. Kastorf Law, LLC, *Counsel for Plaintiff-Appellees*;

192. Kastorf, Kurt, *Counsel for Plaintiff-Appellees*;

193. Kaufman, Alex, *Counsel for Intervenor-Defendants*;

194. Keker Van Nest & Peters LLP, *Counsel for Plaintiff-Appellees*;

195. Kemp, Brian, Governor of the State of Georgia, *State Defendant-Appellant;*

196. Kennedy, David, *Defendant*;

197. Kennedy, Kate, *Counsel for Plaintiff-Appellees*;

198. Keogh, William, *Counsel for Defendant*;

199. Khan, Sabrina, *Counsel for Plaintiff-Appellees*;

200. Kim, Danielle, *Counsel for Plaintiff-Appellees*;

201. Kingsolver, Justin, *Counsel for Plaintiff-Appellees*;

202. Klein, Spencer, *Counsel for Plaintiff-Appellees*;

203. Knapp, Halsey, *Counsel for Plaintiff-Appellees*;

204. Koorji, Alaizah, *Counsel for Plaintiff-Appellees*;

205. Krevolin & Horst, LLC, *Counsel for Plaintiff-Appellees*;

206. Kucharz, Kevin, *Counsel for Defendant*;

207. Lakin, Sophia, *Counsel for Plaintiff-Appellees*;

208. Lam, Leo, *Counsel for Plaintiff-Appellees*;

209. Lang, Antan, *Defendant*;

210. LaRoss, Diane, *Counsel for State Defendant-Appellants*;

211. Latino Community Fund of Georgia, *Plaintiff-Appellee*;

212. Lauridsen, Adam, *Counsel for Plaintiff-Appellees*;

213. Lawhon, Justin R., *Counsel for Defendant*

214. Law Office of Bryan L. Sells, LLC, *Counsel for Plaintiff-Appellees*;

215. Law Office of Gerald R Weber, LLC, *Counsel for Plaintiffs-Appellees*;

216.  Law Office of Heather Szilagyi, *Counsel for Plaintiff-Appellees*;

217.  Lawyers' Committee for Civil Rights Under Law, *Counsel for Plaintiffs-Appellees*;

218.  Le, Anh, *Former Defendant*;

219.  League of Women Voters of Georgia, Inc., *Plaintiff-Appellee*;

220.  Leung, Kimberly, *Counsel for Plaintiff-Appellees*;

221.  Lewis, Anthony, *Defendant*;

222.  Lewis, Joyce, *Counsel for Plaintiff-Appellees*;

223.  Lin, Stephanie, *Counsel for Plaintiff-Appellees*;

224.  Lindsey, Edward, *State Defendant-Appellant*;

225.  Lower Muskogee Creek Tribe, *Plaintiff-Appellee*;

226.  Lowman, David, *Counsel for Defendant*;

227.  Ludwig, Jordan, *Counsel for Plaintiff-Appellees*;

228.  Luth, Barbara, *Defendant*;

229.  Ma, Eileen, *Counsel for Plaintiff-Appellees*;

230.  Mack, Rachel, *Counsel for Defendant*;

231.  Macon-Bibb County Board of Elections, *Defendant*;

232.  Mahoney, Thomas, *Defendant*;

233.  Manifold, Zach, *Defendant*;

234.  Martin, Grace Simms, *Counsel for Defendants*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

235. Mashburn, Matthew, *State Defendant-Appellant*;

236. May, Caitlin, *Counsel for Plaintiff-Appellees*;

237. Maynard, Darius*, Former Defendant*;

238. McAdams, Issac, *Defendant*;

239. McCandless, Spencer, *Counsel for Plaintiff-Appellees*;

240. McCarthy, Thomas, *Counsel for Intervenor-Defendants*;

241. McClain, Roy, *Defendant*;

242. McCord, Catherine, *Counsel for Plaintiff-Appellees*;

243. McFalls, Tim, *Defendant*;

244. McFarland, Ernest, *Counsel for Plaintiff-Appellees*;

245. McGowan, Charlene, *Counsel for State Defendant-Appellants*;

246. Mcrae, Colin, *Defendant*;

247. Melcher, Molly, *Counsel for Plaintiff-Appellees*;

248. Metropolitan Atlanta Baptist Ministers Union, Inc., *Plaintiff-Appellee*;

249. Miller, Nicholas, *Counsel for State Defendant-Appellants*;

250. Milord, Sandy, *Counsel for Defendant*;

251. Minnis, Terry, *Counsel for Plaintiff-Appellees*;

252. Mizner, Susan, *Counsel for Plaintiff-Appellees*;

253. Mocine-McQueen, Marcos, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

254. Momo, Shelley, *Counsel for Defendant*;

255. Morrison, Tina, *Counsel for Plaintiff-Appellees*;

256. Mosbacher, Jennifer, *Defendant*;

257. Motter, Susan, *Defendant*;

258. Murchie, Laura, *Counsel for Plaintiff-Appellees*;

259. Murray, Karen, *Defendant*;

260. NAACP Legal Defense and Education Fund, Inc., *Counsel for Plaintiff-Appellees*;

261. National Republican Congressional Committee, *Intervenor-Defendant*;

262. National Republican Senatorial Committee, *Intervenor-Defendant;*

263. Natt, Joel, *Defendant*;

264. Nemeth, Miriam, *Counsel for Plaintiff-Appellees*;

265. Nercessian, Armen, *Counsel for Plaintiff-Appellees*;

266. Newland, James, *Defendant*;

267. Nguyen, Candice, *Counsel for Plaintiff-Appellees*;

268. Nguyen, Phi, *Counsel for Plaintiff-Appellees*;

269. Nkwonta, Uzoma, *Counsel for Plaintiff-Appellees*;

270. Noa, Jack, *Defendant*;

271.  Noland Law Firm, LLC, *Counsel for Defendants;*

272.  Noland, William H., *Counsel for Defendant*s;

273.  Norris, Cameron, *Counsel for Intervenor-Defendants*;

274.  Norse, William, *Defendant*;

275.  Nwachukwu, Jennifer, *Counsel for Plaintiff-Appellees*;

276.  O'Brien, James, *Defendant*;

277.  O'Connor, Eileen, *Counsel for Plaintiff-Appellees*;

278.  O'Lenick, Alice, *Defendant*;

279.  Olm, Rylee, *Counsel for Plaintiff-Appellees*;

280.  Oxford, Neil, *Counsel for Plaintiff-Appellees*;

281.  Paik, Steven, *Plaintiff-Appellee*;

282.  Pant, Shontee, *Counsel for Plaintiff-Appellees*;

283.  Paradise, Loree, *Counsel for State Defendant-Appellants*;

284.  Parker, Warrington, *Counsel for Plaintiff-Appellees*;

285.  Pelletier, Susan, *Counsel for Plaintiff-Appellees*;

286.  Petrany, Stephen J., *Counsel for State Defendant-Appellants*

287.  Porter, Megan, *Counsel for Plaintiff-Appellees*;

288.  Powell, Laura, *Counsel for Plaintiff-Appellees*;

289.  Prince, Joshua, *Counsel for State Defendant-Appellants*;

290.  Pulgram, Laurence, *Counsel for Plaintiff-Appellees*;

291.  Pullar, Patricia, *Defendant*;

292.  Qadir, Hunaid, *Defendant*;

293.  Radzikinas, Carla, *Defendant*;

294.  Raffensperger, Brad, Secretary of State of Georgia, *State Defendant-Appellant*;

295.  Raffle, Rocky, *Defendant*;

296.  Ramahi, Zainab, *Counsel for Plaintiff-Appellees*;

297.  Remlinger, Brian, *Counsel for Plaintiff*

298.  Rich, James, *Counsel for Plaintiff-Appellees*;

299.  Richardson, Jasmyn, *Counsel for Plaintiff-Appellees*;

300.  Richmond County Board of Elections, *Defendant*;

301.  Ringer, Cheryl, *Counsel for Defendant*;

302.  Rise, Inc., *Plaintiff-Appellee*;

303.  Rodriguez, Anthony, *Defendant*;

304.  Rosborough, Davin, *Counsel for Plaintiff-Appellees*;

305.  Rosenberg, Ezra, *Counsel for Plaintiff-Appellees*;

306.  Rosenberg, Steven, *Counsel for Defendant*;

307.  Russ, John, *Counsel for Plaintiff-Appellees*;

308.  Ruth, Kathleen, *Defendant*;

309.  Ryan, Elizabeth, *Counsel for Plaintiff-Appellees*;

310. Sabzevari, Arash, *Counsel for Defendant*;

311. Sachdeva, Niharika, *Counsel for Plaintiff-Appellees*;

312. Schaerr, Gene C., *Counsel for State Defendant-Appellants*;

313. Schaerr Jaffe, LLP, *Counsel for State Defendant-Appellants*;

314. Scott, William, *Counsel for Defendant*;

315. Seals, Veronica, *Defendant*;

316. Segarra, Esperanza, *Counsel for Plaintiff-Appellees*;

317. Sells, Bryan, *Counsel for Plaintiff-Appellees*;

318. Shah, Niyati, *Counsel for Plaintiff-Appellees*;

319. Sheats, Gala, *Defendant*;

320. Shelly, Jacob, *Counsel for Plaintiff-Appellees*;

321. Shirley, Adam, *Defendant*;

322. Sieff, Adam, *Counsel for Plaintiff-Appellees*;

323. Silas, Tori, *Defendant*;

324. Sixth District of the African Methodist Episcopal Church, *Plaintiff-Appellee*;

325. Smith, Casey, *Counsel for Plaintiff-Appellees*;

326. Smith, Dele, *Defendant*;

327. Smith, Mandi, *Defendant*;

328. Solh, Chavira, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

329. Solomon, Elbert, *Plaintiff-Appellee*;

330. Sosebee, Charlotte, *Defendant*;

331. Southern Poverty Law Center, *Counsel for Plaintiff-Appellees*;

332. Sowell, Gregory, *Counsel for Defendant*;

333. Spangler, Herbert, *Former Defendant*;

334. Sparks, Adam, *Counsel for Plaintiff-Appellees*;

335. Squiers, Cristina, *Counsel for State Defendant-Appellants*;

336. State of Georgia, *State Defendant;*

337. Stewart Melvin & Frost, LLP, *Counsel for Defendant*;

338. Strawbridge, Patrick, *Counsel for Intervenor-Defendants*;

339. Sumner, Stuart, *Counsel for Intervenor-Defendants*;

340. Sullivan, Rebecca N., *Former Defendant*;

341. Sung, Connie, *Counsel for Plaintiff-Appellees*;

342. Swift, Karli, *Defendant*;

343. Szilagyi, Heather, *Counsel for Plaintiff-Appellees*;

344. Tatum, Tobias, *Counsel for State Defendant-Appellants*;

345. Taylor English Duma LLP, *Counsel for State Defendant-Appellants*;

346. Taylor, Wandy, *Defendant*;

347. Thatte, Anuja, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

348.  The ACLU Foundation Disability Rights Program, *Counsel for*

   *Plaintiff-Appellees*;

349.  The Arc of the United States, *Plaintiff-Appellee*;

350.  The Concerned Black Clergy of Metropolitan Atlanta, Inc.,

   *Plaintiff-Appellee*;

351.  The Georgia State Election Board, *State Defendant-Appellant*;

352.  The Justice Initiative, Inc., *Plaintiff-Appellee*;

353.  The New Georgia Project, *Plaintiff-Appellee*;

354.  The Republican National Committee, *Intervenor-Defendant*;

355.  The Urban League of Greater Atlanta, Inc., *Plaintiff-Appellee*;

356.  Thomas, Ethan, *Counsel for Plaintiff-Appellees*;

357.  Thompson, Grace, *Counsel for Plaintiff-Appellees*;

358.  Till, Ann, *Defendant*;

359.  Topaz, Jonathan, *Counsel for Plaintiff-Appellees*;

360.  Trent, Edward, *Counsel for State Defendant-Appellants*;

361.  Tucker, William, *Counsel for Plaintiff-Appellees*;

362.  Tyson, Bryan, *Counsel for State Defendant-Appellants*;

363.  Uddullah, Angelina, *Plaintiff-Appellee*;

364.  Unger, Jess, *Counsel for Plaintiff-Appellees*;

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

365. United States Department of Justice, *Counsel for Plaintiff-Appellees*;

366. United States of America, *Plaintiff-Appellee*;

367. Van Stephens, Michael, *Counsel for Defendant*;

368. Vander Els, Irene, *Counsel for Defendant*;

369. Varghese, George, *Counsel for Plaintiff-Appellees*;

370. Varner, Johnny, *Defendant*;

371. Vasquez, Jorge, *Counsel for Plaintiff-Appellees*;

372. Vaughan, Elizabeth, *Counsel for State Defendant-Appellants*;

373. Waite, Tristen, *Counsel for Defendant*;

374. Wang, Emily, *Counsel for Plaintiff-Appellees*;

375. Ward-Packard, Samuel, *Counsel for Plaintiff-Appellees*;

376. Wardenski, Joseph, *Counsel for Plaintiff-Appellees*;

377. Watson, Jeanetta R., *Former Defendant*;

378. Webb, Brian K., *Counsel for State Defendant-Appellants*;

379. Weber, Gerald, *Counsel for Plaintiff-Appellees*;

380. Weigel, Daniel, *Counsel for State Defendant-Appellants*;

381. Wesley, Carol, *Defendant*;

382. White, Daniel, *Counsel for Defendant*;

383. White, William, *Counsel for Intervenor-Defendants*;

384. Wiggins, Larry, *Defendant*;

385. Wilberforce, Nana, *Counsel for Plaintiff-Appellees*;

386. Wilborn, Eric, *Counsel for Defendant*;

387. Willard, Russell D., *Counsel for State Defendant-Appellants*;

388. Williams, Gilda, *Counsel for Plaintiff-Appellees*;

389. Williams, Tuwanda, *Counsel for Defendant*;

390. Wilmer Cutler Pickering Hale and Dorr LLP, *Counsel for Plaintiff-Appellees*;

391. Wilson, Jacob C., *Counsel for Defendants*;

392. Wilson, Melanie, *Counsel for Defendant*;

393. Wingate, Mark, *Defendant*;

394. Winichakul, Pichaya, *Counsel for Plaintiff-Appellees*;

395. Women Watch Afrika, *Plaintiff-Appellee*;

396. Woodfin, Conor, *Counsel for Intervenor-Defendants*;

397. Woolard, Cathy, *Defendant*;

398. Worley, David J., *Former Defendant*;

399. Wurtz, Lori, *Defendant*;

400. Yoon, Meredyth, *Counsel for Plaintiff-Appellees*;

401. Young, Sean, *Counsel for Plaintiff-Appellees*; and

402. Zatz, Clifford, *Counsel for Plaintiff-Appellees*.

*In re: Georgia Senate Bill 202*
*Case No. 23-13085*

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, the Honest Elections Project does not have a parent corporation or a corporation that owns 10% or more of its stock.

*/s/ Jason Brett Torchinsky*
JASON BRETT TORCHINSKY

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS & CORPORATE
DISCLOSURE STATEMENT ........................................................C-1 of 23

TABLE OF CONTENTS.................................................................... i

TABLE OF CITATIONS ................................................................. ii

INTEREST & IDENTITY OF AMICUS CURIAE ..................................... 1

STATEMENT OF THE ISSUES........................................................ 2

INTRODUCTION & SUMMARY OF THE ARGUMENT......................... 3

ARGUMENT .................................................................................. 5

    I.    THE MATERIALITY PROVISION MUST HAVE SOME
           NEXUS TO RACE, OTHERWISE IT RAISES SERIOUS
           CONSTITUTIONAL CONCERNS. ............................................... 5

    II.    THE BIRTHDATE REQUIREMENT IS MATERIAL. ............. 13

CONCLUSION ......................................................................... 16

CERTIFICATE OF COMPLIANCE.............................................. 18

CERTIFICATE OF SERVICE .................................................... 19

# TABLE OF CITATIONS

**<u>Cases</u>**                                                                                            **<u>Page(s)</u>**

*Allen v. Cooper*,
    140 S. Ct. 994 (2020) ........................................................ 9

*Broyles v. Texas*,
    618 F. Supp. 2d 661 (S.D. Tex. 2009) ................................ 6

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ........................................................ 13

*City of Boerne v. Flores*,
    521 U.S. 507 (1997) ............................................... 8, 9, 11

*Diaz v. Cobb*,
    541 F. Supp. 2d 1319 (S.D. Fla. 2008) ............................ 14

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989) ................................................... 13-14

*Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
    527 U.S. 627 (1999) ................................................... 11-12

*Griffin v. Roupas*,
    385 F.3d 1128 (7th Cir. 2004) ........................................ 14

*Hooper v. Cal.*,
    155 U.S. 648 (1895) ........................................................ 12

*Indiana Democratic Party v. Rokita*,
    458 F. Supp. 2d 775 (S.D. Ind. 2006) ............................ 6-7

*Mobile v. Bolden*,
    446 U.S. 55 (1980) ........................................................... 6

*Nader v. Keith*,
    385 F.3d 729 (7th Cir. 2004) .......................................... 14

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ...................................................... 8, 9

*Reno v. Bossier Par. Sch. Bd.*,
    520 U.S. 471 (1997) ......................................................... 7

*Shelby Cnty. v. Holder*,
  570 U.S. 529 (2013) ............................................................... 6, 8, 9, 11

*Shelby Cnty. v. Holder*,
  679 F.3d 848 (D.C. Cir. 2012) ............................................................ 9

*Shelby Cnty. v. Holder*,
  811 F. Supp. 2d 424 (D.D.C. 2011) ..................................................... 9

*Storer v. Brown*,
  415 U.S. 724 (1974) ........................................................................... 1

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ........................................................................... 9

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ........................................................... 10

*United States v. Davis*,
  588 U.S. 445 (2019) ......................................................................... 12

*United States v. Georgia*,
  546 U.S. 151 (2006) ........................................................................... 7

*United States v. Mississippi*,
  380 U.S. 128 (1965) ........................................................................... 6

## **Statutes**

52 U.S.C. § 10101 ................................................................................. 2, 3

## **Rules**

11th Cir. R. 26.1 ................................................................................. 1, 23

Fed. R. App. P. 26.1 ........................................................................... 1, 23

Fed. R. App. P. 27(d) ........................................................................... 18

Fed. R. App. P. 29(a)(3) ......................................................................... 1

Fed. R. App. P. 29(a)(4)(E) ................................................................... 1

Fed. R. App. P. 32(f) ............................................................................ 18

## Constitutional Provisions

U.S. CONST. amend. XV ............................................................... 4, 7

U.S. CONST. art. I, § 4 ................................................................ 5, 6

U.S. CONST. art. I, § 8 ................................................................... 7

## Other

H.R. Rep. No. 88-914, title I (1963),
*reprinted in* 1964 U.S.C.C.A.N. 2391, 2491. ................................... 10

FEDERALIST No. 59. ...................................................................... 8

John C. Fortier & Norman J. Ornstein, *Symposium: The Absentee Ballot*
*and the Secret Ballot: Challenges for Election Reform*,
36 U. Mich. J.L. & Reform (2003). ...................................... 14

John Harwood, *Early Voting Begins in Presidential Battlegrounds: In Iowa,*
*'Ballot Chasers' Seek Decisions and an Edge Weeks Before Election Day,*
Sept. 27, 2004, p. A1. ................................................... 14, 15

Michael Moss, *Absentee Votes Worry Officials as No. 2 Nears,*
N.Y. Times (late ed.), Sept. 13, 2004, p. A1. .................................. 14

R.W. Apple Jr., *Kerry Pins Hopes in Iowa on Big Vote From Absentees,*
N.Y. Times (nat'l ed.), Sept. 28, 2004, p. 18................................... 14

Ron Lieber, *Cast a Ballot From the Couch: Absentee Voting Gets Easier,*
Wall St. J., Sept. 2, 2004, p.D1.......................................... 15

William T. McCauley, "Florida Absentee Voter Fraud,
Fashioning an Appropriate Judicial Remedy,"
54 U. Miami L. Rev. 625 (2000). ...................................... 14

## INTEREST & IDENTITY OF AMICUS CURIAE[1]

The Honest Elections Project is a nonpartisan organization devoted to supporting the right of every lawful voter to participate in free and honest elections. Through public engagement, advocacy, and public-interest litigation, the Project defends the fair, reasonable measures that voters put in place to protect the integrity of the voting process. The Project supports common-sense voting rules and opposes efforts to reshape elections for partisan gain. As the Supreme Court has explained, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). The Project thus has a significant interest in this important case.

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), Amicus Curiae certifies that no party's counsel authored this brief in whole or in part; and no party, party's counsel, or other person—other than the Amicus Curiae, its members, or its counsel—contributed money intended to fund preparing or submitting the brief. Amicus Curiae has also moved for leave of court to file this brief, in accordance with Federal Rule of Appellate Procedure 29(a)(3). All parties have consented to the filing of this brief, except for the New Georgia Project, which informed the undersigned that it takes no position on Amicus Curiae's request for consent to file this amicus brief.

## STATEMENT OF THE ISSUES

1.    Can the Materiality Provision of the Civil Rights Act of 1964 apply to a State absentee-ballot-application requirement that is facially race neutral and was not enacted with the intent to discriminate on the basis of race?

2.    Is requiring a date of birth on absentee-ballot applications a "material" regulation of the vote-by-mail process, as the term "material" is construed for purposes of the Civil Rights Act of 1964, 52 U.S.C. §§ 10101 *et seq.*?

## INTRODUCTION & SUMMARY OF THE ARGUMENT

This case involves an effort to reinvent the federal Civil Rights Act to strike down neutral state voting laws that have nothing to do with racial discrimination. Courts have consistently rebuffed similar efforts. This Court should follow suit.

To administer accessible and secure elections, the Georgia legislature passed Senate Bill 202 ("SB 202"), which was signed into law by Governor Brian Kemp on March 25, 2021. SB 202 requires, among other things, that an applicant provide his or her date of birth on an absentee-ballot-application form (the "Birthdate Requirement"). The Plaintiffs have challenged this requirement (among several other provisions of SB 202).

Specifically, the Plaintiffs contend that the Birthdate Requirement violates the Materiality Provision of the Civil Rights Act of 1964, which forbids any person "acting under color of law" from denying "the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified . . . to vote." 52 U.S.C. § 10101(a)(2)(B). The district court agreed with the Plaintiffs, but in so

3

doing, it distorted the Materiality Provision far beyond what Congress was authorized to enact. This constitutional error commands reversal.

Congress enacted the Materiality Provision under the auspices of the Fifteenth Amendment, which prohibits intentional discrimination in voting based on race. U.S. CONST. amend. XV. By construing the Materiality Provision to cover a provision of state law that has no conceivable relation to race discrimination, the district court unmoored the Materiality Provision from its constitutional dock. And because this Court has an obligation to avoid interpreting the Materiality Provision in a way that would raise grave constitutional concerns, it should reverse the district court's grant of a preliminary injunction.

In any event, the Birthdate Requirement is indeed material. Vote-by-mail offers a tradeoff: allowing voters to cast their ballots from anywhere increases convenience, but it also comes with an increased risk of voter fraud. Georgia weighed these countervailing interests and reasonably concluded that it would allow absentee voting for all Georgia voters while implementing common-sense, simple voter-security regulations to ensure convenient, free, and fair elections in Georgia. And requiring a date of birth with an absentee-ballot-application form helps Georgia election officials determine whether a person casting a ballot is the same person who

registered to vote. The Court should avoid substituting its judgment for that of the political branches in Georgia tasked with administering elections.

## ARGUMENT

### I.    THE MATERIALITY PROVISION MUST HAVE SOME NEXUS TO RACE, OTHERWISE IT RAISES SERIOUS CONSTITUTIONAL CONCERNS.

The district court's interpretation of the Materiality Provision is divorced from the authority under which it was enacted. The power to regulate state elections rests generally in the hands of state legislatures. U.S. CONST. art. I, § 4, cl. 1. The Materiality Provision, a federal law that applies to state elections, is an express product of Congress's efforts to counteract race discrimination in voting. Because its authority to do so is rooted in the Fifteenth Amendment, and because the Fifteenth Amendment was ratified to prevent *intentional* race discrimination in voting, it follows that the Materiality Provision must, at a minimum, apply to state electoral requirements that have *some* nexus to race.

This nexus, however, is nowhere to be found in the district court's preliminary-injunction order. *See generally* No. 1:21-cv-555555, ECF No. 613 (Aug. 18, 2023). At no point does the district court conclude that requiring an individual's date of birth is overtly racially discriminatory, or that is has a racially discriminatory impact. Rightfully so. And that should be the end of the analysis. Because the Plaintiffs' challenge to the Birthdate Requirement has nothing to do with race, it is not actionable under the Materiality Provision. The district court's

contrary conclusion, if allowed to stand, raises serious constitutional concerns that this Court has an obligation to avoid.

"[T]he Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections." *Shelby Cnty v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 461–62 (1991)). Though Congress can regulate some federal elections, U.S. CONST. art. I, § 4; but *see id.* art. I, § 2, cl. 1, it lacks general authority to regulate state elections. Thus, the Materiality Provision "was passed by Congress under the authority of the Fifteenth Amendment" to enforce its protection of "the right to vote *regardless of race*." *United States v. Mississippi*, 380 U.S. 128, 138 (1965) (emphasis added). And under Supreme Court precedent, "racially discriminatory motivation is a necessary ingredient of a Fifteenth Amendment violation." *City of Mobile v. Bolden*, 446 U.S. 55, 62 (1980) (plurality opinion).

Accordingly, courts around the Country have "held that only racially motivated deprivations of rights are actionable under" the Materiality Provision. *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (SD Tex. 2009) (citing *Kirksey v. City of Jackson*, 663 F.2d 659, 664–65 (5th Cir. 1981)), *aff'd*, 381 F. App'x 370 (5th Cir. 2010). They agree that the Materiality Provision cannot "be applied outside the context of racial discrimination." *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d

775, 839 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008).

The district court, however, departed from this constitutionally grounded approach. Instead, it agreed with the Plaintiffs that the Birthdate Requirement violates the Materiality Provision without ever addressing whether the Birthdate Requirement had any nexus to the Amendment that provided it with authority to enact the Civil Rights Act of 1964. This was error.

Because "the Constitution requires a showing of" intentional discrimination that the district court's statutory construction does not, a violation of the Materiality Provision on that theory is not "*a fortiori* a violation of the Constitution." *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 482 (1997). To be certain, the Fifteenth Amendment only permits Congress to "enforce" its substantive provisions "by appropriate legislation." U.S. CONST. amend. XV, § 2. Congress may enforce the Fifteenth Amendment by creating "remedies . . . for actual violations." *United States v. Georgia*, 546 U.S. 151, 158 (2006) (emphasis omitted). It does not, however, have general police power to regulate state elections without a nexus to its Fifteenth Amendment authority.

Thus, the Fifteenth Amendment cannot provide a basis for the Materiality Provision to the extent that the statute is applied to race-neutral requirements. Absent other authority, the Materiality Provision would be unconstitutional. *See* U.S.

CONST. art. I, § 8; *id*. amend. X. "States have broad powers to determine the conditions under which the right of suffrage may be exercised," and "each State has the power to prescribe . . . the manner in which [its officers] shall be chosen." *Shelby Cnty*, 570 U.S. at 543 (cleaned up) (quoting *Carry v. Rash*, 380 U.S. 89, 91 *1965) *and Boyd v. Nebraska el rel. Thayer*, 143 U.S. 135, 161 (1892)). Alexander Hamilton emphasized the point: "Suppose an article had been introduced into the Constitution, empowering the United States to regulate the elections for the particular States, would any man have hesitated to condemn it . . . as a premeditated engine for the destruction of the State governments?" FEDERALIST No. 59, at 453 (Sweetwater Press ed., 2010). "State autonomy with respect to the machinery of self-government defines the States as sovereign entities rather than mere provincial outposts subject to every dictate of a central governing authority." *Northwestern Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 217 (2009) (Thomas, J., concurring in judgment in part and dissenting in part) (hereinafter "*NAMUDNO*").

Although the Supreme Court has held that "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional," *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997), that leeway does not bolster the district court's preliminary-injunction order. As an initial matter, this "congruence and proportionality test" does indeed cabin Congress's power

under the Fifteenth Amendment (even though some have argued that it applies only to Congress's Fourteenth Amendment enforcement authority). Given the textual identity between the two amendments' enforcement mechanisms, that theory lacks any foundation. The Supreme Court's decisions in *Shelby County* and *NAMUDNO* reinforce the point, for they addressed "the very questions one would ask to determine whether [a statute] is congruent and proportional," even though the statute there was founded on the Fifteenth Amendment. *Shelby Cnty v. Holder*, 679 F.3d 848, 859 (D.C. Cir. 2012) (cleaned up); *see also id.* at 885 (Williams, J., dissenting, but agreeing on this point); *accord Shelby Cnty v. Holder*, 811 F. Supp. 2d 424, 449 (D.D.C. 2011); *NAMUDNO*, 557 U.S. at 224–26 (Thomas, J., concurring in judgment in part and dissenting in part); *Shelby Cnty*, 570 U.S. at 542 n.1.[2]

Thus, to justify a statute under Congress's Fourteenth and Fifteenth Amendment authority, the Supreme Court has required "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Allen v. Cooper*, 140 S. Ct. 994, 1004 (2020) (quoting *Boerne*, 521 U.S. at 520). "On the one hand, courts are to consider the constitutional problem Congress faced—both the nature and the extent of state conduct violating the

---

[2] Of course, the congruence-and-proportionality test may well be suspect, since it allows Congress to go beyond remedying actual constitutional violations, which, as noted, require a finding of discriminatory intent. *See Tennessee v. Lane*, 541 U.S. 509, 555–60 (2004) (Scalia, J., dissenting).

[Constitution]. That assessment usually . . . focuses on the legislative record." *Id.* "On the other hand, courts are to examine the scope of the response Congress chose to address that injury." *Id.* In applying these tests, "a statute's current burdens must be justified by current needs." *Shelby County*, 570 U.S. at 550 (cleaned up).

The district court's construction of the Materiality Provision flunks this means-end test. There is no record evidence whatsoever that Georgia adopted SB 202 (which on its face is entirely race neutral) to discriminate based on race. Thus, the Materiality Provision cannot be used to challenge the Birthdate Requirement.

As a threshold matter, Congress has never identified any constitutional problem with voter-registration (much less absentee-application) laws themselves. Contrast that void with the observation in the Materiality Provision's legislative history that "registrars w[ould] overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting a Negro application for the same or more trivial reasons." H.R. Rep. No. 88-914, title I (Nov. 20, 1963), *reprinted in* 1964 U.S.C.C.A.N. 2391, 2491. It noted that "the crux of the problem" "c[a]me not from discriminatory laws," but "from the discriminatory application and administration of apparently nondiscriminatory laws." *Id.* (cleaned up). "[F]or th[at] reason," Congress passed the Materiality Provision. *Id.* Yet this case, like other

recent challenges that invoke the Materiality Provision, attacks a neutral state law—not discriminatory administration by a voting official.

Indeed, Congress was not focused on absentee rules at all when it enacted the Materiality Provision. Absentee voting was rarely used before the 1970s and did not become prominent until recent years. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 188 (5th Cir. 2020) ("[T]he right to vote in 1971 did not include a right to vote by mail. In-person voting was the rule, absentee voting the exception."); *see also Voting by mail and absentee voting*, MIT Election Data & Science Lab (Mar. 16, 2021), https://perma.cc/YY6H-9YB8. The notion that there exist any legislative findings that would tie the Materiality Provision to the sort of requirements that exist in SB 202 is farcical.

In any event, the Birthdate Requirement is plainly intended to prevent voter fraud by easing the burden of identification thrust on election officials—not to disenfranchise anyone based on his or her race. State attempts to combat fraud (while expanding opportunities to vote more broadly) have nothing to do with racial discrimination. Congress never pointed to any history of "pervasive," "flagrant," "widespread," or "rampant" discrimination in absentee voting rules. *Shelby Cnty*, 570 U.S. at 554 (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 308, 315, 331 (1966)). And certainly, Congress has not pointed to "current conditions" of such discrimination. *Id.* at 550. Georgia has attempted to expand access to the ballots by

11

allowing all Georgia voters to vote absentee by mail. It is profoundly reasonable that the State would simultaneously attempt to limit potential fraud in the process. And requiring an applicant to write their birth date is not a high bar.

Next, consider the Materiality Provision's means. This Court has looked to limitations like "termination dates, geographic restrictions, [and] egregious predicates" "to ensure Congress' means are proportionate to ends legitimate." *City of Boerne*, 521 U.S. at 533. As interpreted by the district court, the Materiality Provision's "indiscriminate scope offends th[ese] principle[s]." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 647 (1999). But it remains true that the Birthdate Requirement has no relation at all to intentional race discrimination.

In sum, the Materiality Provision is unconstitutional if the district court's interpretation is correct. "It is an elementary principle of statutory interpretation that an ambiguous statute must be interpreted, whenever possible, to avoid unconstitutionality." *Davis*, 588 U.S. at 493–94 (Kavanaugh, J., dissenting). This is not "a case of avoiding possible unconstitutionality. This is a case of avoiding actual unconstitutionality." *Id.* at 2351. Thus, "every reasonable construction must be resorted to in order to save [the Materiality Provision] from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895). "This Court's longstanding practice of saving ambiguous statutes from unconstitutionality where fairly possible affords

12

proper respect for the representative branches of our Government." *Davis*, 588 U.S. at 493–94 (Kavanaugh, J., dissenting).

Leaving the district court's unconstitutional interpretation on the books would perpetuate an unlawful scheme. This would, in turn, disregard Congress's goals and prerogatives. *See id.* ("[A] presumption never ought to be indulged, that congress meant to exercise or usurp any unconstitutional authority, unless that conclusion is forced upon the Court by language altogether unambiguous." (quoting *United States v. Coombs*, 37 U.S. 72 (1838))). And it impedes the States from ensuring the integrity of their own election processes. This Court should reverse.

## II.    THE BIRTHDATE REQUIREMENT IS MATERIAL.

Should the Court allow the Plaintiffs to maintain this action (and for a whole host of reasons discussed throughout this litigation, it should not), their claims still fail as a matter of law. Simply put, Georgia's Birthdate Requirement is material in every sense of the word. The voter's birthday is a simple way to verify the identity of the voter. And the identity of the voter—and that the voter is who they claim to be—is certainly material to their qualifications to vote.

Unlimited and unregulated vote-by-mail systems breed chaos and confusion. Simple checks to verify identity help alleviate that chaos. It is not too much to ask absentee voters to comply with basic, straightforward, readily discernible requirements to have their vote-by-mail ballot counted. And asking the Court to

13

dispense with such requirements and count their ballots anyway is how issues regarding fraud, confidence, and orderly administration metastasize.

"[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992). The public's interest in the maintenance, order, and integrity of elections is compelling. *See, e.g.*, *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *see also Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1335 (S.D. Fla. 2008). Scores of caselaw stand for this universally accepted principle.

Vote-by-mail options involve a tradeoff; as ballot-casting convenience expands, regulation must counterbalance the increased risk of fraud. The most fundamental concern with absentee voting is, of course, the risk that someone other than the registered voter might submit the registered voter's ballot. Indeed, in *Griffin v. Roupas*, Judge Posner recounted the many issues that can accompany unlimited absentee voting. In his view, "[v]oting fraud is a serious problem in U.S. elections generally . . . and it is facilitated by absentee voting." *Griffin*, 385 F.3d at 1128, 1130–31 (7th Cir. 2004) (citing John C. Fortier & Norman J. Ornstein, *Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. MICH. J.L. & REFORM (2003); William T. McCauley, "Florida Absentee Voter Fraud: Fashioning an APPROPRIATE JUDICIAL REMEDY," 54 U. MIAMI L. REV. 625,

631–32 (2000); *Michael Moss, Absentee Votes Worry Officials as Nov. 2 Nears*, N.Y. TIMES (late ed.), Sept. 13, 2004, p. A1.). After comparing no-excuse absentee voting to take-home exams, Judge Posner warned that "[a]bsentee voters . . . are more prone to cast invalid ballots than voters who, being present at the polling place, may be able to get assistance from the election judges if they have a problem with the ballot." *Id.* at 1131 (citing *Nader v. Keith*, 385 F.3d 729, 732-33 (7th Cir. 2004); R.W. Apple Jr., *Kerry Pins Hopes in Iowa on Big Vote From Absentees*, N.Y. TIMES (nat'l ed.), Sept. 28, 2004, p. A18; John Harwood, *Early Voting Begins in Presidential Battlegrounds: In Iowa, 'Ballot Chasers' Seek Decisions and an Edge Weeks Before Election Day*, Sept. 27, 2004, p. A1; Moss, *supra*; Ron Lieber, *Cast a Ballot From the Couch: Absentee Voting Gets Easier*, WALL ST. J., Sept. 2, 2004, p. D1.).

The Birthdate Requirement is a commonsensical and simple rule to regulate the expansion of absentee voting. It remains crucial that when an absentee ballot is received, Georgia can make sure the vote cast was cast by the person who purportedly mailed in the ballot. The Birthdate Requirement serves to verify the identity of the voter while still permitting the convenience of absentee voting.

Georgia has gone above and beyond to make voting as easy as possible by allowing every Georgia voter to vote absentee. In return, requiring applicants to fill out their date of birth on the application is a small ask to ensure the process is secure

and the identity of the person casting the matches the identity of the registered voter. Mistakes happen. But they happen more frequently, and with greater consequences when common-sense, simple—yet crucial—regulations are carelessly dispensed with. The Court need not, and should not, do so here by granting the Plaintiffs the relief they seek.

Vote-by-mail procedures, when adopted, must be accompanied by checks to assure the integrity of elections. Compelling policy considerations thus weigh heavily against permitting unsecured voting by mail in Georgia by dispensing with easily satisfied safeguards. Through their challenge, the Plaintiffs have asked the federal courts to cast aside the policy considerations weighed by Georgia, which ask nothing more of absentee voters than writing their birthday on their application in exchange for the ability to vote from anywhere. This Court should decline that invitation.

## CONCLUSION

For these reasons, the Court should reverse the district court's grant of preliminary injunction.

Dated: July 8, 2024                Respectfully submitted,

*/s/ Jason Brett Torchinsky*

Jason Brett Torchinsky
Edward M. Wenger
Zachary D. Henson
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW,
Suite 643A
Washington, DC 20037
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)
*jtorchinsky@holtzmanvogel.com*
*emwenger@holtzmanvogel.com*
*zhenson@holtzmanvogel.com*

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 27(d) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,359 words.

2.  This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jason Brett Torchinsky*
JASON BRETT TORCHINSKY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day July, 2024, a true copy of the foregoing motion was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filers.


/s/ Jason Brett Torchinsky
JASON BRETT TORCHINSKY