No. 23-13085

# United States Court of Appeals for the Eleventh Circuit

IN RE: GEORGIA SENATE BILL 202

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-mi-55555 (Boulee, J.)

## SUPPLEMENTAL BRIEF OF GOP APPELLANTS

William Bradley Carver, Sr.
Baxter D. Drennon
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
BCarver@hallboothsmith.com
BDrennon@hallboothsmith.com

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Intervenor-Defendants*

*In re: Georgia Senate Bill 202*, No. 23-13085

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and the Georgia Republican Party, Inc., have no parent corporation, and no corporation owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. In accordance with Circuit Rule 26.1-2(c), appellants certify that the CIP contained in the previous briefs are complete, subject to the following additions:

Futch, Jayme Briana Hayes, *Counsel for AME Plaintiffs-Cross-Appellants*;

Sherrill, Miranda Cherkas, *Counsel for State Defendants-Appellants*; and

Thompson, John Henry, *Counsel for State Defendants-Appellants.*


Dated: April 20, 2026                    */s/ Gilbert C. Dickey*
                                         Counsel for Intervenor-Defendants

C - 1

**TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement........................C-1

Table of Authorities.................................................................................................................ii

Introduction ..............................................................................................................................1

Argument....................................................................................................................................3

    I.     Several state officials are proper appellants. ............................................................ 3

          A.  The Governor has standing. .............................................................................5

          B.  The Secretary of State has standing. ..............................................................6

          C.  The State Election Board and its members have standing. ..........................7

          D. The State has standing. .....................................................................................8

    II.    Recent Supreme Court precedent confirms Intervenors' standing. ..................12

Conclusion ..............................................................................................................................17

Certificate of Compliance ....................................................................................................19

Certificate of Service.............................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) ..................................................................5, 12

*\*Bost v. Ill. State Bd. of Elections*,
  146 S. Ct. 513 (2026) ..........................................................2, 15, 16, 17

*Brnovich v. Democratic Nat'l Comm.*,
  594 U.S. 647 (2021) ..............................................................3, 6, 11, 12

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) .......................................................................12

*FDA v. All. for Hippocratic Medicine*,
  602 U.S. 367 (2024) ............................................................. 2, 13, 14

*Hand v. Scott*,
  888 F.3d 1206 (11th Cir. 2018)..................................................8

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................. 2, 13, 15

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ...................................................................7, 8

*\*League of Women Voters of Fla. v. Fla. Sec'y of State*,
  66 F.4th 905 (11th Cir. 2023)................................................. 1-11

*League of Women Voters of Fla. v. Lee*,
  595 F. Supp. 3d 1042 (N.D. Fla. 2022) ...........................................9

*League of Women Voters v. Lee*,
  566 F. Supp. 3d 1238 (N.D. Fla. Oct. 8, 2021) ..............................10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) .................................................................13

*Maine v. Taylor*,
  477 U.S. 131 (1986) ...................................................................4, 8

*Maryland v. King*,
  567 U.S. 1301 (2012) ..................................................................8

*Mickles v. Country Club*,
  887 F.3d 1270 (11th Cir. 2018)....................................................12

*Nelson v. Experian Info. Sols.*,
  144 F.4th 1350 (11th Cir. 2025) .................................................................13

*Ohio Democratic Party v. Blackwell*,
  2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005)........................................16

*Org. for Black Struggle v. Ashcroft*,
  978 F.3d 603 (8th Cir. 2020) .......................................................................8

*Perdue v. Baker*,
  586 S.E.2d 606 (Ga. 2003) .......................................................................5, 6

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ......................................................................................14

*RNC v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024)......................................................................15

*RNC v. Wetzel*,
  120 F.4th 200 (5th Cir. 2024)......................................................................15

*Rodemaker v. City of Valdosta*,
  110 F.4th 1318 (2024) .................................................................................11

*\*Schultz v. Alabama*,
  42 F.4th 1298 (11th Cir. 2022) ................................................ 1, 3, 4, 10-12

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2005)......................................................................17

*Town of Chester v. Laroe Ests.*,
  581 U.S. 433 (2017) ....................................................................................13

*UFCWU v. Brown Grp.*,
  517 U.S. 544 (1996) .............................................................................. 16, 17

*United States v. Amodeo*,
  916 F.3d 967 (11th Cir. 2019)........................................................................6

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ......................................................................................3

## Statutes

Fla. Stat. §16.01.............................................................................................5

Fla. Stat. §97.012 ..........................................................................................7

Ga. Code §21-2-31 .........................................................................................7

Ga. Code §21-2-50..........................................................................................7

Ga. Code §45-12-26.................................................................................................6

Ga. Code §45-15-3...................................................................................................6

Ga. Code §45-15-35.................................................................................................5

## INTRODUCTION

Supreme Court and circuit precedent both confirm this Court's jurisdiction over this appeal. Starting with this Court's precedent, *League of Women Voters of Florida v. Florida Secretary of State* held that certain state officials need not be bound by an injunction against the enforcement of state election law for appellate standing. *LWV*, 66 F.4th 905 (11th Cir. 2023). Though only a single county official had been enjoined, Florida's Secretary of State, who was charged with uniform enforcement of election law had standing to appeal. So did Florida's Attorney General who was authorized to represent the state in federal litigation. This holding followed from the State's interest in defending its law through its authorized representatives.

*Schultz v. Alabama* doesn't address state executive officials' standing to defend state law. 42 F.4th 1298 (11th Cir. 2022). There, state judges sought to appeal an injunction of a bail policy that bound only a sheriff. With no argument that they were authorized defenders of a state law, the judges wrongly claimed that they were bound. This Court found that they were not. That holding—that false claims to be bound are not sufficient for standing—says nothing about when state executive officials have standing despite not being bound.

The executive officials in this case have everything in common with the executive officials in *League of Women Voters*, and nothing in common with the judges in *Schultz*. The district court barred certain county officials from enforcing Georgia's birthdate requirement for mail-in ballots. Appellants are not claiming to be bound by this injunction. Instead, this case involves executive officials responsible for the statewide administration of election law and defending state law in federal courts. The Governor, for

1

example, is an appellant, and is a mirror image of Florida's Attorney General in *League of Women Voters*. Like the Attorney General, the Governor is charged with enforcement of state law and defending state law in federal litigation. He is "empowered to represent" Georgia "in this action." *LWV*, 66 F.4th at 945. Several other state officials—the Secretary of State, the State Election Board, and the State itself—have standing for similar reasons.

If those officials weren't enough, recent Supreme Court precedent confirms that the Republican Intervenors have standing. To start, Republican Intervenors have diverted resources to avoid harm to their ability to turn out Republican voters and election Republican candidates. Those harmed interests are a political party's "core business activities," as required by *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). But this Court need not stop with *Alliance*. Even more recent Supreme Court precedent makes Intervenors' standing easy. *Bost v. Illinois State Board of Elections* holds that that candidates have standing as competitors in the election when the election "process departs from the law." 146 S. Ct. 513, 519-20 (2026). They are injured regardless of whether the departures "help, hurt, or have no effect" on their chance of winning. *Id.* at 520. Major political parties are competitors in elections "who spend untold time and resources seeking to claim the right to voice the will of the people" no less than competitors. That's why the proverbial scoreboard appears as a red or blue map. And if that weren't enough, the party can sue to represent its candidates.

Appellate standing turns on whether an appellant has suffered "an injury fairly traceable to the judgment below,'" and "a favorable ruling from the appellate court

would redress that injury." *West Virginia v. EPA*, 597 U.S. 697, 718 (2022) (cleaned up). Only "one party" needs to have standing to reach the merits. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 665 (2021). But here each Appellant can show harm from the district court's judgment. Plaintiffs never grapple with those harms. They advance one theory in response: that only named parties enjoined by the district court have standing to appeal. This Court could not have been clearer when it rejected that theory the first time: a defendant "need not be bound by an injunction" to appeal. *LWV*, 66 F.4th at 945. Each Appellant has standing, so the Court should reach the merits.

## ARGUMENT

### I. Several state officials are proper appellants.

This Court's precedents confirm that several state appellants have standing. Appellate standing turns on whether an appellant is injured by the decision below. *League of Women Voters* and *Schultz* both confirm this principle. *See LWV*, 66 F.4th at 945 (appellate standing asks whether a party "has experienced an injury 'fairly traceable to the judgment below'"); *Schultz*, 42 F.4th at 1317 (appellate standing turns on whether a party is "aggrieved by the decision"). "Parties may lack standing to appeal trial court rulings that do not affect their interests." *Schultz*, 42 F.4th at 1317. But when making that assessment, "[f]ederal courts must respect states' strong interests" in the validity of state law. *LWV*, 66 F.4th at 945.

*League of Women Voters* shows how these principles apply here. There, this Court held that two state executive officials "need not be bound" to appeal an injunction against enforcement of the State's election law. *Id.* The State "'clearly has a legitimate interest in the continued enforceability of its own statute.'" *Id.* (quoting *Maine v. Taylor*,

3

477 U.S. 131, 137 (1986)). The two state executive officials could represent that interest on appeal. Florida's Secretary of State had a "statutory obligation to uniformly administer election laws" that was enough to give him "standing to appeal." *Id.* And state law "empowered" the Attorney General "to represent Florida in this action." *Id.*

*Schultz*, in contrast, says nothing about the standing of executive officials to defend the state's interest on appeal. For good reason: the arguments in *Schultz*, inverted the issues addressed in *League of Women Voters*. Where *League of Women Voters* addressed the standing of executive officials to appeal an injunction even though they were not bound, *Schultz* involved judicial officials claiming—wrongly—that they were bound. The district court had enjoined a sheriff to follow certain bail procedures, but the judges argued that they could appeal because the injunction had "the 'practical effect' of enjoining them" and was "enforceable against them through contempt." *Schultz*, 42 F.4th at 1317. This Court rejected "[e]ach of these arguments" because the judges were not bound "practically or otherwise" and were not subject to contempt. *Id.* Appellants here don't raise those arguments.

This case is the mirror image of *League of Women Voters.* The district court preliminarily enjoined several county election boards and their members[1] "from rejecting absentee ballots based on any error or omission relating to the Birthdate Requirement." Doc. 613 at 38. Several state officials and the State itself appeal that injunction. Though they are not bound by the injunction, the State's interest "'will be practically impaired or impeded'" if it cannot litigate through "'its duly authorized representatives.'" *LWV*,

---

[1] The enjoined counties are Bibb, Chatham, Clarke, Clayton, Cobb, Columbia, DeKalb, Fulton, Gwinnett, Hall, and Richmond. Doc. 613 at 5 n.3. The county defendants did not oppose the preliminary injunction. *See id.* at 6 n.6.

66 F.4th at 945-46 (quoting *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022)). So these officials have standing.

### A.    The Governor has standing.

Georgia's Governor is a carbon copy of Florida's Attorney General in *League of Women Voters*. The Florida Attorney General had standing to appeal an injunction prohibiting only a single county election official from enforcing Florida's prohibition against soliciting voters waiting in line to cast their votes. *LWV*, 66 F.4th at 945. That's because under Florida law, the Attorney General has authority to "appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested" in federal court. Fla. Stat. §16.01(4)-(5). That state law "empowered" the Attorney General "to represent Florida" in that case. *LWV*, 66 F.4th at 945. So even though the injunction ran against only a lone county defendant, the Attorney General had standing to appeal. *Id.*

Georgia's Governor is no different. In Georgia, the Governor and Attorney General have "concurrent powers" over state litigation. *Perdue v. Baker*, 586 S.E.2d 606, 609 (Ga. 2003). "Both executive officers are empowered to make certain that state laws are faithfully enforced," and "both may ensure that the State's interests are defended in legal actions." *Id.* The two officers "share the responsibility to guarantee that the State vigorously asserts and defends its interests in legal proceedings." *Id.* at 609-10. The Governor has "power to direct the Department of Law, through the Attorney General as head thereof, to institute and prosecute in the name of the state such matters, proceedings, and litigations as he shall deem to be in the best interest of the people of the state." Ga. Code §45-15-35. And he has power to "provide for the defense of any action

instituted against the state or any action instituted against any person, the result of which is of interest to the state because of any claim inconsistent with the state's sovereignty, jurisdiction, or rights." *Id.* §45-12-26. "When required to do so by the Governor," the Attorney General must "participate in, on behalf of the state," all "civil actions to which the state is a party." *Id.* §45-15-3.

The Governor "is a defendant" and "appealed the judgment." *LWV*, 66 F.4th at 945; Doc. 83 at 44, No. 1:21-cv-1284 (N.D. Ga.); Doc. 2-2, No. 23-13085 (11th Cir.). When an executive official "is authorized to represent the State in any action in federal court," he has "standing to appeal the decision below" even if not enjoined himself. *Brnovich*, 594 U.S. at 665. The district court's order prevents the Governor from ensuring that "state laws are faithfully enforced." *Perdue*, 586 S.E.2d at 609. And it runs squarely into his obligation to "defends [the State's] interests in legal proceedings." *Id.* at 610. So there can be no question that the Governor is "'aggrieved by the judgment.'" *Cf. United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). Plaintiffs can draw no principled distinction between the Georgia Governor here and the Florida Attorney General in *League of Women Voters*; both are "empowered to represent [the State]" in cases like this one. 66 F.4th at 945. The Governor has standing to appeal.

### B. The Secretary of State has standing.

Georgia's Secretary of State also has standing to appeal. Again, *League of Women Voters* controls. There, this Court held that Florida's Secretary of State had standing to appeal an injunction even though he was not enjoined. The Secretary "need not be bound by an injunction nor even bear the primary responsibility for enforcing the solicitation provision to enjoy the requisite interest." *LWV*, 66 F.4th at 945. It was enough

6

that under Florida law, the Secretary "has a statutory obligation to uniformly administer elections." *Id.* (citing Fla. Stat. §97.012(1)).

Like the Florida Secretary, the Georgia Secretary bears responsibilities to enforce state election laws. The Georgia Secretary is "the state's chief election official" tasked with "determin[ing] the forms of nomination petitions, ballots, and other forms" affected by the district court's order. Ga. Code §21-2-50. The district court's preliminary injunction interferes with that duty by enjoining county officials from enforcing the birthdate requirement for absentee ballots. Like the Florida Secretary, the Georgia Secretary is injured by the court order impeding his ability to fulfill his "statutory obligation." *LWV*, 66 F.4th at 945. Even if uniformity were the key responsibility (and not election administration), in Georgia that duty lies with the State Election Board, who is also an appellant. *See infra* Section I.C. In short, "[t]he Secretary is not merely a 'concerned bystander' without a 'personal stake in defending [the law's] enforcement.'" *LWV*, 66 F.4th at 945 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)).

### C.     The State Election Board and its members have standing.

The State Election Board also has standing to appeal. State law tasks the Board and its members with promulgating rules and regulations "so as to obtain uniformity" statewide in election administration. Ga. Code §21-2-31(1). That's the same duty that *League of Women Voters* held gave the Florida Secretary of State standing to appeal. 66 F.4th at 945. The district court's decision enjoining some counties and not others necessarily impairs that "statutory obligation to uniformly administer elections." *Id.* (citing Fla. Stat. §97.012(1)); Doc. 613 at 5, 38. So the Georgia State Election Board and its members have standing to appeal.

### D.    The State has standing.

Even if the Governor, the Secretary, and the State Election Board weren't enough, the State also has standing to appeal. "[A] State clearly has a legitimate interest in the continued enforceability of its own statutes." *Taylor*, 477 U.S. at 137. A State is thus injured when a federal court blocks "statutes enacted by representatives of its people." *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). That's true even if the injunction runs against lower-level officials because the State has a "strong interest" in the validity of its laws. *LWV*, 66 F.4th at 945. Indeed, Plaintiffs admit that the State is a proper appellant when "the injunction effectively bound the state itself by enjoining a state official tasked with implementing the law at-issue." Doc. 70-1 at 11, No. 23-13085 (11th Cir.). That the injunction here runs against a county official is no distinction at all, since that was also true in *League of Women Voters*. 66 F.4th at 945. In grasping for differences, Plaintiffs continue to show that these cases are the same.

In these circumstances, "[n]o one doubts that a State has a cognizable interest 'in the continued enforceability' of its laws that is harmed by a judicial decision declaring a state law" invalid. *Hollingsworth*, 570 U.S. at 709-10 (quoting *Taylor*, 477 U.S. at 137). The district court's order enjoins the "continued enforceability" of the birthdate requirement in some counties, *Taylor*, 477 U.S. at 137, which means "the State will, in effect, be precluded from applying its duly enacted legislation regarding election procedures" in those counties, *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020). The State is thus a proper appellant.

\*      \*      \*

8

Plaintiffs' attempts to distinguish *League of Women Voters* confirm it applies here. Each of their arguments is legally—and often factually—incorrect.

*First*, Plaintiffs have consistently failed to distinguish *League of Women Voters*. They've argued that "the Secretary of State who appealed the judgment in *League of Women Voters* was actually one of the parties enjoined." Doc. 70-1 at 11, No. 23-13085 (11th Cir.). That's false. The injunction against enforcing the solicitation provision at issue ran against only the "Defendant Supervisors of Elections," and "their successors in office, deputies, officers, employees, agents, [and] any person in active participation" with them. *League of Women Voters of Fla. v. Lee*, 595 F. Supp. 3d 1042, 1182 (N.D. Fla. 2022), *rev'd in part*, 66 F.4th 905. Because the district court found that only a few plaintiffs had standing against "Bay County Supervisor of Elections Andersen's enforcement of the solicitation definition," *id.* at 1122, the district court "enjoined only [that] one defendant from enforcing the Solicitation Definition," who "did not appeal," *LWV*, 66 F.4th at 945 (cleaned up). This Court held that the Secretary "need not be bound by an injunction nor even bear the primary responsibility for enforcing the solicitation provision to enjoy the requisite interest" for appellate standing. *Id.* Plaintiffs thus can't distinguish *League of Women Voters* on the false premise that the injunction ran against the Secretary.

Plaintiffs next argue that this case is different from *League of Women Voters* because the state defendants "successfully opposed Plaintiffs' motion" on standing grounds. Doc. 70-1 at 10, No. 23-13085 (11th Cir.). False, again—and irrelevant, to boot. The state defendants in *League of Women Voters* prevailed on standing in the district court. *See League of Women Voters v. Lee*, 566 F. Supp. 3d 1238, 1255 (N.D. Fla. Oct. 8, 2021)

9

(dismissing solicitation-provision claims against the Secretary of State and the Attorney General "for lack of standing"). They nevertheless had standing to appeal the injunction against a lone county official. *LWV*, 66 F.4th at 945. That's because appellate standing turns on whether a party is injured by the decision below, not what defenses they raised in the district court. *See id.* That the state defendants prevailed on standing in the district court thus cannot bar them from appealing an injunction against other officials enforcing state law.

*Second*, Plaintiffs assert that *Schultz* rejected an "identical argument" about the State's interest in uniform enforcement. Doc. 97 at 3, No. 23-13085 (11th Cir.). That's false too. *Schultz* gives a numbered lists of the arguments this Court rejected: "(1) the injunction has the 'practical effect' of enjoining [the judges]; (2) even if the injunction does not directly bind them, it is still enforceable against them through contempt; and (3) even if the first two arguments fail, this Court may exercise 'pendent party appellate jurisdiction' to hear their appeal." *Schultz*, 42 F.4th at 1317. Plaintiffs' purported "identical argument" goes unmentioned.

As explained, the arguments addressed in *Schultz* were the inverse of the arguments raised in *League of Women Voters*—and here. *League of Women Voters* and this case involve state executive officials, including the State's "duly authorized representatives … in federal litigation" and officials charged with the uniform enforcement of election law, who are injured by an injunction barring enforcement of a state election law even if not "bound by [the] injunction." *LWV*, 66 F.4th at 945-46. The judges in *Schultz* lacked that kind of interest, so they instead argued that they were bound. *Schultz*, 42 F.4th at 1317. This Court rejected "each of these arguments" advanced by the judges,

10

but it affirmed that what matters is whether an appellant is "aggrieved by the decision." *Id.*

Plaintiffs' misreading invites this Court to create an intracircuit split from *Schultz*'s purported rejection of a never-raised argument. *Cf. Rodemaker v. City of Valdosta*, 110 F.4th 1318, 1326 (2024) (panel must "try to find a 'basis of reconciliation'" of circuit precedents). *Schultz*, they insist, means "appellants have no appellate standing where 'the injunction, by its very terms, does not require [appellants] to do anything.'" Pls.' Reply Br. 20-21 (quoting *Schultz*, 42 F.4th at 19-20) (cleaned up). But *League of Women Voters* holds that a party "need not be bound by an injunction nor even bear the primary responsibility for enforcing" a state law to have standing. 66 F.4th at 945. The Court need not search far to reconcile these decisions. All that is required is rejection of Plaintiffs' false premise that *Schultz* confronted an identical argument. *Schultz* made that easy by listing the argument that it was rejecting: the judges' argument that "the injunction has the 'practical effect' of enjoining them." *Schultz*, 42 F.4th at 1317. Nothing in *Schultz* contradicts *League of Women Voters*' holding that executive officials responsible for ensuring enforcement of state law and representing the State in litigation "enjoy the requisite interest" even if they are not "bound by an injunction." 66 F.4th at 945; *accord Brnovich*, 594 U.S. at 665. The judges in *Schultz* bear no relation to the executive officers present here, or in *Brnovich*, or in *League of Women Voters*.

*Third*, that Plaintiffs didn't name the State as a defendant doesn't bar the State from appealing an injunction that harms its interests. Plaintiffs argue that "[o]nly parties to a lawsuit, or those that properly become parties, have standing to appeal an adverse judgment." Doc. 98-1 at 4, No. 23-13085 (11th Cir.) (citing *Mickles v. Country Club*, 887

11

F.3d 1270, 1278 (11th Cir. 2018)). Even if correct, this argument wouldn't get Plaintiffs very far since the Governor is authorized to represent the State's interest in litigation, and all that is needed is "one party with standing." *Brnovich*, 594 U.S. at 665. But in any event, the Supreme Court has clarified that whether someone has become a party may "not implicate the jurisdiction of the courts under Article III of the Constitution." *Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002). Standing turns on the presence of an "interest" sufficient for a "'case or controversy.'" *Id.* at 6. In fact, the Court pointed to the exact language Plaintiffs rely on as a question separate from standing: "What is at issue, instead, is whether petitioner should be considered a 'party' … We have held that 'only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.'" *Id.* at 7. *Mickles* does not refute those holdings since this Court held that the appellants had properly opted in as plaintiffs and could appeal the adverse judgment dismissing the lawsuit. 887 F.3d at 1275-78. The decision says nothing about whether the State suffers an Article III injury when its law is enjoined.

Whether the Court has jurisdiction boils down to whether at least one defendant is "aggrieved by the decision" below. *Schultz*, 42 F.4th at 1317. And a State has "strong interests" in the validity of its laws. Thus, "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Berger*, 597 U.S. at 191. Several such officials are present here.

## II.  Recent Supreme Court precedent confirms Intervenors' standing.

This Court need not reach the Republican Intervenors standing—either in the district court or this Court—unless it concludes that no State Defendant has standing.

In the district court, "an intervenor of right must have Article III standing" only when the intervenor "pursue[s] relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests.*, 581 U.S. 433, 440 (2017). Intervenors have not sought relief beyond what the other defendants have sought: dismissal of the suit and denial of the preliminary injunction. And on appeal, when the intervenor is accompanied by a government party with standing, a court of appeals "err[s] by inquiring into" the intervenors' "independent" standing." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020).[2]

Even if the Court were to conclude that no other defendant has standing, recent Supreme Court precedent confirms Intervenors' standing. Start with *Alliance for Hippocratic Medicine.* There, the Court rejected standing "based on incurring costs to oppose [the defendant's] actions." 602 U.S. at 394. By contrast, spending money to mitigate harm to the organization's "core business activities" is a concrete injury. *Id.* at 395 (citing *Havens*, 455 U.S. at 379). Thus, the Court left in place *Havens'* holding that organizations suffer a "concrete and demonstrable injury" when "the organization's activities" are "perceptibly impaired." 455 U.S. at 379. While that type of injury is usually accompanied by a "consequent drain on the organization's resources," *id.*, *Alliance* clarifies that expenditure of resources alone is not enough when it is not needed to avoid injury to the organization's activities, 602 U.S. at 394. In other words, the "consequent drain on the organization's resources" is not *itself* the injury, but it can be good evidence that the organization's activities are "perceptibly impaired." *Havens*, 455 U.S. at 379; *accord Nelson v. Experian Info. Sols.*, 144 F.4th 1350, 1355 (11th Cir. 2025) ("[W]hether a plaintiff's

---

[2] Intervenors take no position on Plaintiffs' standing in the district court.

'assertion of wasted time and effort' is a concrete harm depends on whether the wasted time and effort responded to something that 'is itself a concrete harm.'").

Under *Alliance for Hippocratic Medicine*, Intervenors have standing to appeal the district court's preliminary injunction, which perceptibly impairs the RNC's ability to elect Republican candidates and turn out Republican voters. That injury first ripened when the district court issued its order, and the RNC provided evidence that the preliminary injunction would hinder its "various activities to help elect Republicans in Georgia" before the 2024 election. Doc. 90-2 at 2, No. 23-13085 (11th Cir.) (Decl. of Elliot Echols). By "nullif[ying] the birthdate requirement for absentee ballots for the 2024 election," the district court changed the rules governing the validity of ballots in Georgia's election. *Id.* at 3. That court-ordered change damages Republican voters' "confidence and turnout" in Georgia elections. *Id.*; *accord Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Because it changes voting rules, it requires the RNC "to change its get-out-the-vote efforts and guidance," which includes "labor intensive" "voter contact and education efforts." Doc. 90-2 at 4. Those changes are necessary "to maintain competitive parity with Democratic Party candidates." *Id.* And at the end of the day, the preliminary injunction could "materially affect the likelihood of electoral victory by Republican candidates in Georgia elections." *Id.* at 5.

The RNC is not merely diverting resources or incurring costs "to gather information and advocate against" the preliminary injunction. *All. for Hippocratic Med.*, 602 U.S. at 394. Rather, the RNC diverts resources solely to prevent injury to its "core business activities" of turning out voters and electing candidates. *Id.* at 395. Both the Fourth and Fifth Circuits have thus upheld the RNC's organizational standing after *Alliance for*

14

*Hippocratic Medicine. See RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 399 (4th Cir. 2024); *RNC v. Wetzel*, 120 F.4th 200, 205 & n.3 (5th Cir. 2024). And because the RNC diverts resources as a "consequen[ce]" of those injuries, rather than because of "abstract social interests," the RNC has standing "in its own right." *Havens*, 455 U.S. at 379. As Justice Barrett recently explained, a candidate's "expenditures" are a traditional "[p]ocketbook harm" when spent to "mitigate a substantial risk" that "[i]nvalid ballots" will "put his election at risk and damage his reputation." *Bost*, 146 S. Ct. at 524 (Barrett, J., concurring in the judgment). The RNC's injuries are precisely the same here, since "[t]he district court's preliminary injunction may materially affect the likelihood of electoral victory by Republican candidates in Georgia elections." *See* Doc. 90-2 at 2, No. 23-13085.

But a more recent Supreme Court precedent makes this case even simpler. In *Bost*, the Court held that "a candidate has a personal stake in the rules that govern the counting of votes in his election." *Bost*, 146 S. Ct. at 519. As competitors "to represent the people," candidates "have an interest in a fair process" and "an accurate result" in their elections. *Id.* at 519-20. On top of that, election procedures that depart from the law "erode[] public confidence" and can harm "the winner's political legitimacy." *Id.* at 520. Thus, a candidate is injured "when the process departs from the law" whether the departures "help, hurt, or have no effect on a candidate's electoral prospects." *Id.* at 519-20.

Political committees like the RNC and GAGOP share the same "personal stake" in fair election rules. *Id.* at 520. Like candidates, political committees "compete for the support of the people" in elections. *Id.* Political committees similarly "spend untold

time and resources seeking to claim the right to voice the will of the people" giving them a particularized interest "in knowing what that will is." *Id.* A political committees like the RNC "supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform." Doc. 90-2 at 2. Also like candidates, political parties suffer a "loss of legitimacy" when they participate in elections conducted under improper procedures. *Bost*, 146 S. Ct. at 520. Each of these interests is injured by unlawful "rules that govern the counting of votes," *id.* at 522, like the district court's preliminary injunction here.

Intervenors don't need a third basis for standing, but they have one anyway. *Bost* puts to rest any dispute about candidates' standing to challenge rules affecting their election. And because Intervenors' members include political candidates running for election in Georgia, Intervenors have associational standing on behalf of their candidates. *See UFCWU v. Brown Grp.*, 517 U.S. 544, 553 (1996). Intervenors meet all three associational-standing elements: Their candidates "would otherwise have standing to sue in their own right" under *Bost. Id.* Intervenors' "interests" in reversing the preliminary injunction "are germane to the organization's purpose" in getting those candidates elected. *Id.* And "the relief requested" by Intervenors does not require "the participation of individual [candidate] members." *Id.* Their intervention motion explained how the preliminary injunction implements "'changes in voting procedures'" that "'affect candidates running as Republicans and voters who [are] members of the … Republican Party.'" Doc. 19-1 at 6, No. 1:21-cv-1259 (N.D. Ga.) (quoting *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005)). And "because Movants' candidates will 'actively seek [election or] reelection in contests governed by the

16

challenged rules,'" they have a continuing "interest in 'demand[ing] adherence' to Georgia's rules." *Id.* (quoting *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005)). Intervenors thus have associational standing on behalf of their candidate members. *See UFCWU*, 517 U.S. at 553.

*    *    *

Intervenors have three independent bases for standing to appeal the preliminary injunction. They suffer a classic "[p]ocketbook harm" in mitigating risks that "[i]nvalid ballots" will swing the election under the court-ordered rule change. *Bost*, 146 S. Ct. at 524 (Barrett, J., concurring in the judgment). They suffer injury to their "interest in a fair process" and "an accurate result" in their elections, just as candidates do. *Id.* at 519 (majority op.). And they have associational standing on behalf of candidates, who indisputably have standing. *See id.*; *UFCWU*, 517 U.S. at 553. Intervenors thus "have an obvious personal stake in how the result is determined and regarded." *Bost*, 146 S. Ct. at 520.

**CONCLUSION**

The Court has jurisdiction over the appeal and should reverse the preliminary injunction.

17

Dated: April 20, 2026

Respectfully submitted,

*/s/ Gilbert C. Dickey*

William Bradley Carver, Sr.
Baxter D. Drennon
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
BCarver@hallboothsmith.com
BDrennon@hallboothsmith.com

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

18

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of the Court's supplemental briefing order because it contains 4,948 words as counted by the word-processing system used to prepare the document.

*/s/ Gilbert C. Dickey*

## CERTIFICATE OF SERVICE

I certify that on April 20, 2026, I served this brief by electronically filing it with this Court's ECF system, which will serve everyone requiring notice.

*/s/ Gilbert C. Dickey*